## APPENDIX OF UNPUBLISHED OPINIONS

1.  *Atul K. Amin Family Ltd. P'ship v. Steward Easton Hosp., Inc.,* No. 5:20-cv-04161, 2021 WL 2012509 (E.D. Pa. Sept. 20, 2021)

2.  *Kump v. State Farm Fire & Cas. Co.,* No. 3:12-CV-72, 2012 WL 1123897 (M.D. Pa. Apr. 4, 2012)

3.  *Madonna v. Francisco*, No. 13-807, 2014 WL 981568 (E.D. Pa. Mar. 13, 2014)

4.  *Riley v. Timmons Constr. LLC*, No. 2:21-cv-286, 2022 WL 597356 (W.D. Pa. Feb. 28, 2022)

5.  *Thomas v. TransCore, LP*, No. 21-CV-1040, 2024 WL 4820782 (M.D. Pa. Nov. 18, 2024)

6.  *Tray, Inc. v. Devon Int'l Grp., Inc.*, No. 21-1254, 2021 WL 1734845 (E.D. Pa. May 3, 2021)

1

2021 WL 2012509

2021 WL 2012509
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

ATUL K. AMIN FAMILY
LIMITED PARTNERSHIP, Plaintiff,
v.
STEWARD EASTON HOSPITAL,
INC., et al., Defendants.

Civil No. 5:20-cv-04161-JMG
|
Filed 05/19/2021

**Attorneys and Law Firms**

Elizabeth Howard Marcon, Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, Susan A. Lawless, Florio Perrucci Steinhardt & Fader, LLC, Bethlehem, PA, for Plaintiff.

Donald E. Wieand, Jr., Stevens & Lee, Allentown, PA, for Defendants.

**MEMORANDUM OPINION**

GALLAGHER, United States District Court Judge

 **\*1** On July 17, 2020, Plaintiff Atul K. Amin Family Limited Partnership filed a complaint in the Court of Common Pleas, Northampton County. Plaintiff, the owner of a medical office building, alleged that its tenants, Defendants Steward Easton Hospital, Inc., Steward Health Care System, LLC, and Steward Medical Group, Inc., owe rent for a nine-month negotiation period that preceded the parties' execution of a written lease agreement.

Defendants removed the action to this Court on August 24, 2020, and subsequently moved for judgment on the pleadings. They contend that Plaintiff's breach of contract and promissory estoppel claims are barred by the parol evidence rule. Indeed, the executed lease agreement makes no mention of Defendants' prior obligation to pay rent, and it contains an expansive integration clause that purports to foreclose the possibility of any additional agreements or promises between the parties. We agree that the parol evidence rule applies here and therefore grant Defendants' motion.

**I. BACKGROUND**

Plaintiff owns a medical office building in Easton, Pennsylvania. Compl. ¶ 6, ECF No. 1 [hereinafter "Compl."]. In early 2018, Defendants purchased a medical practice that was renting Suite 203 in Plaintiff's building. *Id.* ¶¶ 7–8. Around the same time, Defendants approached one of Plaintiff's representatives to assume the Suite 203 lease and to lease the neighboring space, Suite 204. *Id.* ¶¶ 8–9. Discussions ensued for months; between April 2018 and January 2019, Defendants continued to request information about Suites 203 and 204 while Plaintiff, in reliance on Defendants' representations, did not lease the properties to a third party. *Id.* ¶¶ 10–11. Defendants promised to pay the monthly rent and associated costs during this negotiation period, even though the parties had not memorialized their agreement in writing. *Id.* ¶¶ 24, 28.

On or about January 31, 2019, Plaintiff and Defendants finally completed their negotiations. *Id.* ¶ 12. Under the executed written agreement (the "Lease Agreement"), Defendants leased Suites 203 and 204 for $13,566.66 per month. *Id.* ¶¶ 13–14. The Lease Agreement also contained the following integration clause:

> 29. ENTIRE AGREEMENT. This Lease and any exhibits attached hereto and forming a part hereof set forth all of the covenants, promises, agreements, conditions, and understanding between Lessor and Lessee concerning the Leased Premises, and there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between the parties other than as are herein set forth. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon either Lessor or Lessee unless the same is reduced to writing and executed by Lessor and Lessee.

Answer Ex. A 17, ECF No. 2-1.

Plaintiff now brings this action to recover unpaid rent and associated costs from April 2018 to January 2019, the period

2021 WL 2012509

before execution of the Lease Agreement. Compl. ¶ 20. Plaintiff has made repeated demands for payment, all to no avail. *Id.* ¶ 19.

## II. STANDARD

 **\*2** "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings will not be granted unless "the movant clearly establishes that no material issue of fact remains ... and that he is entitled to judgment as a matter of law." *Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 545 (E.D. Pa. 2020) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). In evaluating the motion, courts review the pleadings, exhibits attached to the pleadings, matters of public record, and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Id.* (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

Motions for judgment on the pleadings share the same standard of review as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). We therefore "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

To survive the motion, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). To that end, a plaintiff cannot rely on mere "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955.

In total, our analysis includes three steps. We first note "the elements [the] plaintiff must plead to state a claim." *Connelly*,

809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937). We then "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). Finally, we assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

## III. DISCUSSION [1]

### A. Breach of Contract

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Plaintiff alleges that Defendants orally promised to pay rent for Suite 204 between April 2018 and January 2019. Compl. ¶¶ 23–24, 28. Defendants allegedly breached this contract by failing to pay any rent for that period. *Id.* ¶ 25.

 **\*3** Defendants argue that this oral agreement is superseded by the Lease Agreement, which contains an integration clause. *See, e.g.*, Defs.' Mot. 8, ECF No. 6-2. Plaintiff responds that the Lease Agreement is separate from the oral agreement that was breached by Defendants. Pl.'s Opp'n 4, ECF No. 7-1. Plaintiff's claim depends on oral representations that the parties exchanged before entering the written Lease Agreement, so it necessarily turns on application of the parol evidence rule.

"Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 298 n.18 (E.D. Pa. 2019) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 436–37 (Pa. 2004)). First, we ask whether the writing at issue is "integrated," meaning it "represents the 'entire contract between the parties.' " *Claremont Apartments v. Principal Com. Funding II*, No. 09-6138, 2010 WL 2364305, at \*6 (E.D. Pa. June 8, 2010) (quoting *Yocca*, 854 A.2d at 436). This is a question of law for courts to decide. *Id.* A writing is the parties' entire contract "if it appears to be a contract complete within itself,

2021 WL 2012509

couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement." *Marano v. Fulton Bank, N.A.*, No. 812 MDA 2016, 2017 WL 1242793, at *3 (Pa. Super. Ct. Apr. 4, 2017) (quoting *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791, 792 (Pa. 1924)). While not dispositive, an integration clause "which states that a writing is meant to represent the parties' entire agreement is ... a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 872 (E.D. Pa. 2016) (quoting *Yocca*, 854 A.2d at 436).

If we conclude that the parties have entered an integrated agreement, the parol evidence rule is triggered, and "all prior negotiations and agreements in regard to the same subject matter, whether oral or written, are excluded from consideration." *Claremont*, 2010 WL 2364305, at *6 (quoting *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001)). "Courts have taken a rather relaxed view of the same subject matter requirement." *Lipman Brothers, Inc. v. Apprise Software, Inc.*, No. 13-4439, 2015 WL 4476983, at *5 (E.D. Pa. July 22, 2015) (internal quotation marks and citation omitted). The touchstone is whether the prior agreement is "so interrelated" with the integrated agreement that "both would be executed at the same time and in the same contract." *Deutsch v. Wells Fargo Bank, N.A.*, No. 13-3914, 2015 WL 3833226, at *4 (E.D. Pa. June 22, 2015) (quoting *Mellon Bank Corp. v. First Union Real Est. Equity & Mortg. Invs.*, 951 F.2d 1399, 1406 (3d Cir. 1991)). A prior agreement that concerns a different subject matter than the integrated agreement is "entirely separate" and is not barred by the parol evidence rule. *See, e.g.*, *AscellaHealth, LLC v. CRx Health Servs., LLC*, No. 14-5949, 2015 WL 1573395, at *3 (E.D. Pa. Apr. 9, 2015) ("A separate oral agreement may exist ... only if it concerns a subject matter different than the written agreement." (internal citation omitted)); *Techinomics, Inc. v. Forest Power & Energy Holding, Inc.*, No. 2:16-1859, 2017 WL 2536969 at *5, 2017 U.S. Dist. LEXIS 72874 at *14 (W.D. Pa. May 11, 2017) (recognizing that prior representations share the "same subject matter" as the integrated agreement if they "relate to subjects that were specifically addressed in the written contract" (quoting *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No. 2:12-cv-00931, 2013 WL 3147312, at *5 (W.D. Pa. June 19, 2013))).

**\*4** Defendants first contend that the Lease Agreement "constitutes the 'final and complete expression of the parties'

intent.' " Defs.' Mot. 5, ECF No. 6-2 (quoting *Yocca*, 854 A.2d at 497–98). We agree, and find that the Lease Agreement is fully integrated. Crucially, it contains an integration clause that sets forth the parties' entire understanding concerning Suites 203 and 204. It indicates that "there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between the parties other than" those set forth in the Lease Agreement. Answer Ex. A 17, ECF No. 2-1. Such an integration clause "make[s] the parol evidence rule clearly applicable." *Mellon Bank*, 951 F.2d at 1406 n.6 (citing *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115, 117 (Pa. Super. Ct. 1987)).

Plaintiff does not dispute the authenticity of the Lease Agreement. *See* Pl.'s Opp'n 4, ECF No. 7-1. Instead, it insists that the parol evidence rule is inapplicable because the "oral agreement ... from April 2018 through January 2019" is separate from the Lease Agreement. *Id.*

This argument does not pass muster. First, it contradicts the Lease Agreement, which exclusively "set[s] forth all of the covenants, promises, agreements, conditions, and understanding between [Plaintiff] and [Defendants] concerning the Leased Premises," Suites 203 and 204. Answer Ex. A 17, ECF No. 2-1. This expansive integration clause "excludes the possibility of any enforceable prior oral agreements relative to the [p]roperty." *Alphonse Hotel Corp. v. Tran*, No. 13 Civ. 7859(DLC), 2014 WL 3801230, at *7 (S.D.N.Y. Aug. 1, 2014) (internal quotation marks omitted) (applying Pennsylvania law). Second, both the alleged oral agreement and the Lease Agreement concern the same subject matter: the terms governing Defendants' lease of Suites 203 and 204. This overlap in subject matter distinguishes this case from others where a plaintiff successfully alleged breach of a prior oral agreement that was separate from a subsequent, integrated one. *See, e.g.*, *Pilallis v. Elec. Data Sys. Corp.*, No. 97-5662, 1998 WL 211740 at *3, 1998 U.S. Dist. LEXIS 5934 at *9 (E.D. Pa. Apr. 28, 1998) (parol evidence rule did not bar evidence of an oral agreement concerning "a subject which [was] *not* specifically dealt with in the written agreement"); *Brinich v. Jencka*, 757 A.2d 388, 401 (Pa. Super. Ct. 2000) (despite integration clause in construction contract, parol evidence rule did not bar claim based on an oral agreement for services that fell outside its scope).

"[W]here the parol evidence rule will bar the admission of statements necessary to establish a contract or tort claim, a court may properly grant a motion to dismiss." *Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 966 (E.D. Pa. 2015)

2021 WL 2012509

(internal quotation marks and citation omitted); *see also Yocca,* 854 A.2d at 438 ("Having determined that the ... Agreement was the parties' whole contract and cannot be supplemented by the parties' previous negotiations or agreements ... we agree with the trial court's consideration that Appellees' breach of contract claims must be dismissed."). Here, application of the parol evidence rule means that "prior negotiations and agreements in regard to the same subject matter," Defendants' leasing of Suites 203 and 204, "are excluded from consideration." *Claremont,* 2010 WL 2364305, at *6 (quoting *Martin,* 240 F.3d at 233). Accordingly, we will grant Defendants' motion and dismiss Plaintiff's claim for breach of contract.

### B. Promissory Estoppel

"Promissory estoppel is an equitable doctrine that may be invoked to enforce a promise that one party makes to another even in the absence of an enforceable agreement between the parties." *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.,* 654 F. App'x 80, 100 (3d Cir. 2016) (citing *Crouse v. Cyclops Indus.,* 560 Pa. 394, 745 A.2d 606, 610 (Pa. 2000)). To state a claim for promissory estoppel under Pennsylvania law, a party must allege that "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Id.* (quoting *Crouse,* 745 A.2d at 610).

**\*5** Plaintiff claims that it reasonably relied on Defendants' promise to pay rent between April 2018 and January 2019. Compl. ¶¶ 28–29. As a result, Plaintiff "did not pursue other potential tenants or lease agreements for Suite 204" during that period, and it "incurred opportunity costs in the nature of lost rents." *Id.* ¶¶ 29, 31.

Having found that the parties entered an integrated agreement governing the lease of Suites 203 and 204, it necessarily follows that Plaintiff cannot maintain its promissory estoppel claim. "Pennsylvania law does not allow relief for a claim of promissory estoppel when it contradicts, modifies, or supplements an enforceable contract." *Power v. Erie Fam. Life Ins. Co.,* 392 F. Supp. 3d 587, 592 (E.D. Pa. 2019) (citing *Carlson v. Arnot-Ogden Mem'l Hosp.,* 918 F.2d 411, 416 (3d Cir. 1990)); *see also Kump v. State Farm Fire & Cas. Co.,* No. 3:12-CV-72, 2012 WL 1123897, at *3 (M.D. Pa. Apr. 4, 2012) (internal citation omitted) ("[W]here an enforceable contract exists, courts have found that applying the doctrine of promissory estoppel would be inappropriate."). Because the parties have entered a valid, express contract concerning Suites 203 and 204, Plaintiff's promissory estoppel claim must be dismissed. *See, e.g., W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.,* 259 F. Supp. 3d 211, 223 (E.D. Pa. 2017) (dismissing promissory estoppel claim where "valid contracts exist between Plaintiff and Defendant"); *Domino's Pizza LLC v. Deak,* No. 3:05-456, 2007 WL 916896, at *6 (W.D. Pa. Mar. 23, 2007) ("If courts permitted promissory estoppel claims based on representations made during the negotiations for integrated contracts, then there would be little point in enforcing a rule that 'protects a completely integrated written contract from being varied or contradicted by extraneous evidence.' " (quoting *Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.,* 85 F. Supp. 2d 519, 530 (W.D. Pa. 2000))). Indeed, even though Plaintiff premises its claim on oral representations made before the execution of the Lease Agreement, those representations are not sufficiently "separate and distinct from the substance" of the Lease Agreement to support a promissory estoppel claim. *See, e.g., W. Chester,* 259 F. Supp. 3d at 223 ("[I]f this Court were to find that the promises upon which Plaintiff based its claim for promissory estoppel were separate and distinct from the substance of the contract, Pennsylvania law would not preclude Plaintiff's claim." (citing *Ne. Power Co. v. Balcke-Durr, Inc.,* 1999 WL 674332, at *1 (E.D. Pa. Aug. 20, 1999))).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted. An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2012509

---

**Footnotes**

1     The parties apparently agree that Pennsylvania law governs this dispute. *See* Defs.' Mot. 5, ECF No. 6-2; Pl.'s Opp'n 5, ECF No. 7-1. Indeed, the Lease Agreement provides that "all questions regarding its validity,

---

**Atul K. Amin Family Limited Partnership v. Steward Easton Hospital, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 2012509

interpretation, or construction shall be construed in accordance with" Pennsylvania law. Answer Ex. A 17, ECF No. 2-1; *see also Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994) ("Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests.").

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2

2012 WL 1123897

⚑ KeyCite Yellow Flag

Distinguished by Agrotors, Inc. v. Ace Global Markets, M.D.Pa., February 24, 2014

2012 WL 1123897
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Timothy M. KUMP, Plaintiff,
v.
STATE FARM FIRE AND
CASUALTY COMPANY, Defendant.

Civil Action No. 3:12–CV–72.
|
April 4, 2012.

**Attorneys and Law Firms**

Robert G. Fleury, Robert G. Fleury, Esq., Attorney at Law, Troy, PA, for Plaintiff.

Lee E. Ullman, Forry, Ullman, Ullman & Forry, P.C., Reading, PA, for Defendant.

*MEMORANDUM*

A. RICHARD CAPUTO, District Judge.

**\*1** Presently before the Court is Defendant State Farm Fire and Casualty Company's Motion to Dismiss Plaintiff's Complaint. (Doc. 3 .) In his Complaint, Plaintiff Timothy M. Kump alleges a claim for breach of contract as well as a claim for promissory estoppel and detrimental reliance arising from his dealings with his insurer, Defendant State Farm Fire and Casualty Company. State Farm has moved to dismiss the claim for promissory estoppel and detrimental reliance as a plaintiff cannot recover for such a claim where a contract is in operation. The Court finds that, since this action pertains fully to the contractual obligations between these two parties, the equitable claims Kump pleads are unavailable and they will be dismissed.

**BACKGROUND**

Plaintiff Timothy M. Kump alleges the following in his Complaint. Kump, who resides in Towanda, Pennsylvania, has been insured by Defendant State Farm Fire and Casualty for the past thirty-two years. On January 31, 2010, a "temporary updated policy" was put into effect based on the recommendations of State Farm Agent Ken Leone. Specifically, the insurance coverage on Kump's dwelling was raised to $550,000 while the contents coverage was raised to $1,500,000. Kump also maintained a Personal Articles Policy with Defendant State Farm.

On April 24, 2010, Plaintiff "suffered a total loss of his home and all personal property due to a fire and theft at his home in Sheshequin Township, Bradford County, Pennsylvania." (Compl. at ¶ 8, Doc. 1–1.) Following the loss, on May 12, 2010, Kump received a declaration page for the Personal Articles Policy which greatly reduced the coverage available under the policy, specifically as to his coins and fine arts. State Farm Agent Ken Leone, however, had visited Kump's home approximately four months before the fire and represented to Kump that his entire coin collection was covered by the policies. Moreover, "Ken Leone, on multiple occasions between January 2010 and April, 2010, assured the plaintiff that his certified coins and artwork ... were covered by his insurance either through the contents portion of his home owners policy or his Personal Articles Policy." (*Id.* at ¶ 22.) In particular, just prior to the fire, Leone assured Kump that fourteen specific listed coins would be covered under the policy. However, while State Farm has paid for the value of the destroyed home, it has only partially paid for the contents, and for only some of the lost coins and artwork [1] pursuant to the Personal Articles Policy. Kump avers that State Farm, due to its representations through its agent, is liable for "payment above and beyond the amounts listed in the subsequently prepared Declaration Page of the Personal Articles Policy" as well as for the value of "his additional fine arts including his Rembrandts, Picassos, and Frederick Hart Sculptures." (*Id.* at ¶¶ 25–26.)

Kump filed the instant action in the Court of Common Pleas of Bradford County, Pennsylvania on December 12, 2011. Count I of Kump's Complaint alleges breach of contract while Count II makes a claim from promissory estoppel and detrimental reliance. On January 11, 2012, State Farm removed the case to the Middle District of Pennsylvania and filed a Motion to Dismiss on January 18, 2011. State Farm first argues that the claim for attorney fees must be struck from Count I, and Kump concedes that such fees are not appropriate in a contract claim. State Farm further argues that Count II fails to state

Kump v. State Farm Fire and Cas. Co., Not Reported in F.Supp.2d (2012)

2012 WL 1123897

a valid claim for promissory estoppel or detrimental reliance under Pennsylvania law which does not allow such claims where a contract is in operation. The Defendant's Motion has been fully briefed and is ripe for the Court's review.

## DISCUSSION

### I. Legal Standard

**\*2** Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir.2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir.2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir.2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element, *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 263 & n. 13 (3d Cir.1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions,' " *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir.1997)).

### II. Analysis

**\*3** "Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Crouse v. Cyclops Indus.,* 560 Pa. 394, 745 A.2d 606, 610 (Pa.2000) (citing Restatement (Second) of Contracts § 90(1)). Under Pennsylvania law, promissory estoppel requires that "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Id.* Such reliance, however, must be "justifiable reliance." *Schnell v. Bank of New York Mellon,* —— F.Supp.2d ——, Civ.

2012 WL 1123897

Act. No. 11–601, 2011 WL 5865966 at *6 (E.D.Pa. Nov.22, 2011) (citing *Thatcher's Drug Store v. Consol. Supermarkets, Inc.,* 535 Pa. 469, 636 A.2d 156, 160 (Pa.1994)). Thus, where an enforceable contract exists, courts have found that applying the doctrine of promissory estoppel would be inappropriate. *Carlson v. Arnot–Ogden Memorial Hosp.,* 918 F.2d 411, 416 (3d Cir.1990) ("Generally, this doctrine is invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise.").

Similar to promissory estoppel,[2] unjust enrichment "is essentially an equitable doctrine" that also implies a contract and ultimately requires "the defendant to pay the plaintiff the value of the benefit conferred." *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.Ct.1999) (citations omitted). Unjust enrichment specifically occurs where there are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Vives v. Rodriguez,* ––– F.Supp.2d ––––, Civ. Act. No. 09–2728, 2012 WL 298760 at *6 (E.D.Pa. Jan.31, 2012) (quoting *Braun v. Wal–Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa.Super.2011)). Moreover, " 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.' " *Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc.,* Civ. Act. No. 07–1900, 2007 WL 4276841 at *10 (E.D.Pa. Dec.3, 2007) (quoting *Benefit Trust Life Ins. Co. v. Union Nat'l Bank,* 776 F.2d 1174, 1177 (3d Cir.Pa.1985)).

While the two doctrines outlined above are inapplicable in the face of an express contract, either "may be pled in the alternative to a breach of contract claim, although the finding of a valid contract would prevent a party from recovering for either quasi-contractual theory." *Comcast Spectacor L.P. v. Chubb & Son, Inc.,* CIV. A. 05–1507, 2006 WL 2302686 at *23 (E.D.Pa. Aug.8, 2006). Therefore, where the parties cannot agree that such a contract exists, it would be improper to grant dismissal. *Integrated Waste Solutions, Inc. v. Goverdhanam,* CIV. A. 10–2155, 2010

WL 4910176 at *15 n. 8 (E.D.Pa. Nov.30, 2010). Here, however, dismissal of these equitable claims is appropriate as both parties acknowledge that a contract was in effect between them. Kump alleges in his Complaint that he has already recovered under the insurance contract, and explicitly "acknowledges that there was a contract for a personal articles policy." (Pl.'s Br. at 3, Doc. 8.) Yet, Kump founds his claim on the notion "that the defendant, unilaterally, after assuring the defendant that his coin collection and other valuables were insured, lowered the amount of coverage after the loss." (*Id.*) As such, Kump is not pleading in the alternative, but is instead seeking to enlist these equitable principles in construing the contractual obligations between the two parties. This is not permissible as "promissory estoppel claims should not be used to modify an enforceable contract." *Isobunkers, L.L.C. v. Easton Coach Co.,* CIV.A. 09–879, 2010 WL 547518 at *4 (E.D.Pa. Feb.9, 2010); *Iversen Baking Co. v. Weston Foods,* 874 F.Supp. 96, 102 (E.D.Pa.1995) (holding that promissory estoppel "is not designed to protect parties who do not adequately memorialize their contracts in writing."). Therefore, as this dispute is limited only to the contractual obligations of these two parties—specifically, to the coverage State Farm is required to provide—the Court finds that Kump cannot recover on these equitable principles and will dismiss Kump's equitable claims in Count II.

### III. CONCLUSION

**\*4** As a contractual dispute, Plaintiff Timothy M. Kump's equitable claims set out in Count II are inapposite to the instant case as a matter of Pennsylvania law. Therefore, the Court will grant Defendant State Farm Fire and Casualty Company's Motion to Dismiss. Count II will be disposed of in its entirely, and the lawyers fees requested in Count I will be dismissed as both parties agree that such fees are not available for recovery in a contract dispute. An appropriate order follows.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1123897

**Footnotes**

2012 WL 1123897

1       These valuables include: (1) "sixty-one etchings by Rembrandt van Rign with a total value of $102,000.00"; (2) "One hundred Fifty-three etchings, and other mediums by Picasso with an appraised value of $3,118,650.00"; (3) "Thirty pieces of Frederick Elliot Hart sculptures including bases ... with an appraised value of $619,800.00 for ... twenty-one [of those] pieces"; (4) "Three hundred and one rare coins ... including eight 'Stellas's['] from 1879 and 1880 ... [which] alone range from $250,000.00 to $975,000.00 each"; (5) "Two hundred and one $1,000.00 bills"; (6) "Priceless historical written and printed documents and maps dating back hundreds of years to the revolutionary war period and civil war period"; (7) "Approximately $200,000.00 in United States currency in addition to the $1,000.00 bills listed above"; and (8) "Civil war memorabilia including guns, swords and other rare firearms." (Compl. at ¶ 15, Doc. 1–1.)

2       In fact, courts have noted that "[d]etrimental reliance is another name for promissory estoppel." *KDH Electronic Systems, Inc. v. Curtis Technology Ltd.,* —— F.Supp.2d ——, Civ. Act. No. 08–2201, 2011 WL 5428644 at *11 (E.D.Pa. Nov.04, 2011) (citing *Travers v. Cameron County School District,* 117 Pa.Cmwlth. 606, 544 A.2d 547 (Pa.Commw.Ct.1988)).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

3

Madonna v. Francisco, Not Reported in F.Supp.3d (2014)

2014 WL 981568

2014 WL 981568
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Christopher A. MADONNA, Plaintiff,

v.

Gregory J. FRANCISCO, et al., Defendants.

Civil Action No. 13–807.
|
Signed March 13, 2014.

**Attorneys and Law Firms**

Mark J. Hill, Nancy L. Goldstein, Mark J Hill & Associates PC, Philadelphia, PA, for Plaintiff.

Frank R. Emmerich, Jr., Conrad O'Brien, Philadelphia, PA, Joshua Voss, Conrad O'Brien, Harrisburg, PA, Stephen V. Bottiglieri, Gillin & Assoc PC, Media, PA, for Defendants.

## *MEMORANDUM*

PRATTER, District Judge.

**\*1** Plaintiff Christopher Madonna, unable to collect on a default judgment obtained in state court against non-party Kinesis, now seeks to collect on that judgment from Kinesis's alter ego, Defendant Gregory Francisco, and Kinesis's successor, Defendant AvanuOne LLC. Both Defendants filed a motion to dismiss the Second Amended Complaint. The Court will deny AvanuOne's motion and will deny in part and grant in part Mr. Francisco's motion.

## BACKGROUND

Mr. Madonna, a former professional baseball player and former baseball coach for Villanova University, seeks to enforce an outstanding default judgment, which was entered in Pennsylvania state court against Kinesis Software, LLC and Kinesis Software, Inc. (hereinafter, "Kinesis"). The Kinesis entities are not parties to this suit. Mr. Madonna seeks to satisfy the state court default judgment by piercing the corporate veil to collect from either Defendant Gregory Francisco, the owner, president and treasurer of Kinesis, who, Mr. Madonna claims, is Kinesis's alter ego, or Defendant AvanuOne, who Mr. Madonna alleges is the successor to Kinesis.

According to the Second Amended Complaint, in September 2007, Mr. Francisco recruited Mr. Madonna, based on his reputation as an athlete, to assist with the marketing and sales of the Kinesis "First Choice Athlete" business, which features the "Coachware" software product. Mr. Madonna entered into an employment contract with Kinesis under which Mr. Madonna would receive $60,000 annually, plus 8% in commissions, for his services.

However, Mr. Madonna alleges, Mr. Francisco failed to fulfill his end of the bargain, as he refused to compensate Mr. Madonna for his services. On June 3, 2010, Mr. Madonna filed suit against Kinesis in the Court of Common Pleas of Delaware County ("the state court lawsuit"), seeking recovery of his owed salary and commissions. On February 1, 2011, the Court of Common Pleas entered default judgment ("Judgment") against Kinesis for $73,319. Kinesis did not appeal from this Judgment.

On May 11, 2010, AvanuOne purchased the assets of Kinesis in an Asset Purchase Agreement. Mr. Madonna claims that since the time of the asset purchase, AvanuOne has marketed and sold the "Coachware" product that Kinesis previously marketed and sold, and in so doing, has continued to reap the benefits of Mr. Madonna's still uncompensated efforts in marketing and selling the product.

On February 14, 2013, Mr. Madonna filed suit in this Court seeking enforcement of the outstanding Judgment, which he claims was valued at $80,284.05 as of November 1, 2012. Mr. Madonna claims that Mr. Francisco executed the 2010 Asset Purchase Agreement between Kinesis and AvanuOne for purposes of evading liabilities incurred by Kinesis, specifically the liability of the salary and commissions owed to Mr. Madonna.

In this action, Mr. Madonna seeks to pierce the corporate veil to hold Mr. Francisco and AvanuOne liable for the state court judgment entered against the Kinesis entities. He claims that, for example, Mr. Francisco withheld payroll deductions for unemployment compensation but failed to make payments to the appropriate authorities and that he used company money to pay his son's tuition. He also claims, solely on information and belief, that Mr. Francisco depleted assets of Kinesis for his own interests, failed to maintain corporate formalities as a Kinesis corporate officer, defrauded him, and diverted the remaining assets of Kinesis to AvanuOne for purposes of evading liabilities incurred by Kinesis (and may

2014 WL 981568

have "hid[den]" the liability of his owed compensation from AvanuOne at the time of the asset purchase). He also alleges that the Judgment, incurred as a corporate debt of Kinesis, is now a corporate debt of AvanuOne because the sale of Kinesis's assets to AvanuOne was accomplished to prevent Kinesis's creditors from collecting their due.

**\*2**  Further, Mr. Madonna alleges that both Mr. Francisco and AvanuOne are liable for unjust enrichment because they "received and continue to receive benefit from the efforts, reputation and goodwill generated by [Mr. Madonna] while he was employed by the Kinesis entities and working to develop the business of First Choice Athlete" without ever compensating Mr. Madonna for his services. As to each of his three claims, Mr. Madonna requests relief in the form of judgment in the amount of "$80,284.05, plus pre and post judgment interest, attorneys' fees and costs and award such further relief that this Court deems just and equitable."

Both Defendants moved to dismiss Mr. Madonna's original Complaint, and the Court granted Mr. Francisco's motion in part, to the extent that he argued that Mr. Madonna had failed to properly plead AvanuOne's citizenship for the purpose of determining diversity jurisdiction. Mr. Madonna filed an Amended Complaint, curing that defect, and the Defendants again moved to dismiss. The Court denied AvanuOne's motion attacking Mr. Madonna's allegations with respect to the amount in controversy, and, after oral argument, denied as moot Mr. Francisco's motion, giving Mr. Madonna another chance to amend his Complaint. Mr. Madonna then filed a Second Amended Complaint, and once again both Defendants moved to dismiss. Mr. Madonna opposes both motions.

### LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), "in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail ... but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* —— U.S. ——, ——, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir.2010).

In evaluating the sufficiency of a complaint, the court adheres to certain well-recognized parameters. For one, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *see also Twombly,* 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents ."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989); *see also Revell v. Port Auth.,* 598 F.3d 128, 134 (3d Cir.2010). That admonition does not demand the Court turn its back on reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir.2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 236 (3d Cir.2008).

### DISCUSSION

**\*3** Mr. Francisco and AvanuOne present similar arguments, in that they both assert that (1) the doctrine of claim preclusion bars Mr. Madonna's suit, and that (2) Mr. Madonna's suit is barred by the statute of limitations. They also each argue that Mr. Madonna has failed to state a claim against them. The Court will address the first two common arguments, and then will address the asserted pleading deficiencies as to each individual Defendant.

### A. Claim Preclusion

As to their first argument, the Defendants are correct that claims in a second suit are barred when a defendant establishes that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *See Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991). The Court agrees that Mr. Madonna would be prevented from relitigating the issues presented in the state court lawsuit, if that was what he was trying to do.[1] It does not, however, appear that that *is* what Mr. Madonna seeks to do in this lawsuit. Rather, he is attempting to enforce a judgment obtained in a prior suit against other parties by piercing the corporate veil and/or asserting successor liability. Thus, this case does not meet the third prong of the test, as it is not a subsequent suit based on the same cause of action. Moreover, if the Court were to apply the doctrine of claim preclusion here, and if Defendants really are in privity with the Kinesis entities, the doctrine of claim preclusion would actually work against Defendants, given that Mr. Madonna was successful in the underlying state court lawsuit. As to the unjust enrichment claim, Mr. Madonna appears to allege that the Defendants are still benefitting from his uncompensated labor on behalf of Kinesis, and it is unclear whether this continued benefit is completely encompassed by the contract action brought in state court. At this time, then, the Court will not dismiss that cause of action on claim preclusion grounds.

### B. Statute of Limitations

As to the second argument, Defendants argue that Mr. Madonna's "enforcement" claims against them are either fraud claims or sound in fraud, that the alleged fraud occurred more than two years ago, and that therefore the claims are barred by the statute of limitations. Although Mr. Madonna does allege that Mr. Francisco and possibly AvanuOne committed fraudulent acts, the claims do not appear to be fraud claims, and Mr. Madonna confirms this in his opposition.[2] Rather, as noted above, Mr. Madonna brings

claims to enforce the previously obtained state court judgment against Mr. Francisco by endeavoring to pierce the corporate veil and against AvanuOne by asserting successor liability.

Piercing the corporate veil is not a cause of action unto itself; rather it is an equitable doctrine used to remove the protection of the corporate form in cases where justice so requires. *Fletcher–Harlee Corp. v. Szymanski,* 936 A.2d 87, 96 (Pa.Super.2007) (holding, in a case in which a judgment creditor sued a dominant shareholder, in part, to enforce a judgment obtained against a corporation, that "[p]iercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity holder in the corporation ... In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a façade for the operations of the dominant shareholder.") (internal quotation omitted). The proper statute of limitations to apply to a piercing the corporate veil claim depends, then, on the claim against the corporation for which the plaintiff seeks to hold someone else liable. *See, e.g., Genesis Underwriting Mgmt. Co. v. Ins. Mgmt. & Servs., Inc.,* 22 Pa. D & C 4th 119, 121 (Pa.Com.Pl.1994) (applying two-year statute of limitations when claims underlying veil-piercing action were fraud and breach of fiduciary duty). Here, Mr. Madonna seeks to hold Mr. Francisco liable for the judgment entered against the Kinesis entities.

**\*4** Although there are no Pennsylvania cases spelling out which statute of limitations to use in a veil-piercing claim to enforce a judgment—the statute of limitations for the original cause of action against the corporation or the statute of limitations for enforcement of a judgment—courts in other jurisdictions addressing this very issue treat the claim underlying the veil-piercing theory as one to enforce a judgment and, accordingly, apply the statute of limitations for enforcement actions. *See, e.g., William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 608 F.Supp. 1261, 1264 (S.D.N.Y.1985) ("A plaintiff may attempt to enforce a judgment against individuals or corporations allegedly controlling the judgment debtor using a theory of piercing the corporate veil.... Under the *alter ego* and instrumentality theories the corporation and those who have controlled the corporation are treated as but one entity. Thus, the statute of limitations applicable to the corporation should apply to those who are using the corporation as an instrumentality. The action accrued against both the corporation and any *alter egos* when the judgment was entered.") (internal citations omitted).

Madonna v. Francisco, Not Reported in F.Supp.3d (2014)

2014 WL 981568

Under Pennsylvania law, "[a]n action upon a judgment or decree of any court of the United States or of any state" must be commenced within four years. 42 Pa.C.S.A. § 5525(a)(5). The state court judgment in question here was entered less than four years ago, and thus the enforcement claim against Mr. Francisco is timely.

As to the successor liability claim against AvanuOne, the same reasoning that applies to determining the correct statute of limitations for a veil-piercing claim would apply to a successor liability claim. As with piercing the corporate veil, successor liability is simply a means of putting another party in the same shoes as the party against whom a plaintiff has a claim. Again, no Pennsylvania court appears to have ruled on this issue, but other courts have. *See, e.g., Davila v. Magna Holding Co.,* No. 97 C 1909, 1998 WL 578032, at *5–6 (N.D.Ill. Sept.3, 1998) (holding that the statute of limitations for a successor liability claim "would best be found in the limitations period of the underlying claim— here, the enforcement of the ... judgment" and applying Illinois's statute of limitations pertaining to the enforcement of a judgment). Again, then, using this same rubric, Mr. Madonna's claim is timely.

### C. Pleading Sufficiency

#### 1. Mr. Francisco

The Court will now address the Defendants' pleading sufficiency arguments in turn. Mr. Francisco argues that Mr. Madonna has failed to plead facts sufficient to pierce the corporate veil. To pierce the corporate veil under Pennsylvania law, a court considers factors such as "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax Indus. v. Aultman,* 543 Pa. 38, 669 A.2d 893, 895 (Pa.1995). Mr. Francisco contends that the only facts with respect to veil piercing that Mr. Madonna asserts are that he was not paid, that Mr. Francisco collected payroll deductions without paying them to the appropriate authorities, and that Mr. Francisco used Kinesis money to pay his son's tuition. Virtually all of the other allegations that relate to piercing the corporate veil are pleaded "on information and belief," and are merely conclusory recitations of the factors that courts consider in determining whether a corporate veil should be pierced. Mr. Madonna responds to Mr. Francisco's argument by asserting that he has pleaded enough facts relating to Mr. Francisco's fraudulent conduct to survive a motion to dismiss, even under the higher pleading standards of Rule 9(b).

**\*5** Mr. Madonna's veil-piercing allegations are insufficient. The actual facts pleaded in the Second Amended Complaint relating to piercing the corporate veil are sparse, and "legal conclusions couched as ... factual allegations" are insufficient to survive a Rule 12(b)(6) motion. *See Essex Indus.,* 2010 WL 5069871, at *3 (dismissing veil-piercing claim when the bulk of the allegations were "on information and belief" and recited the factors pertinent to veil-piercing in conclusory fashion). Allegations that Mr. Francisco failed to forward payroll deductions to the proper authorities, failed to pay Mr. Madonna after promising payment, and "on information and belief" used company money for his son's tuition, although relevant to the inquiry, do not come close to meeting the high bar set by Pennsylvania courts to pierce the corporate veil. The Court will therefore dismiss the veil-piercing count (Count II) against Mr. Francisco.

Mr. Francisco argues that Mr. Madonna, having had two opportunities to amend already, should not be granted a third opportunity to amend. However, given that this is the first time that the Court has addressed the substance of Mr. Francisco's argument that Mr. Madonna failed to state a veil-piercing claim, the Court will give Mr. Madonna an opportunity specifically to cure this pleading deficiency.

#### 2. AvanuOne

AvanuOne states that Mr. Madonna failed to state a claim against it because Mr. Madonna "has not asserted any statutory provision regarding the authority of this Honorable Court to grant 'enforcement of a state court judgment' " against AvanuOne in Count I of his pleading. It goes on to argue that Mr. Madonna failed to "state [ ]or reference any statute or case law providing this Honorable Court with jurisdiction." In response, Mr. Madonna argues that a successor corporation can be held liable for the debts of a purchased entity under certain circumstances. *See Bostick v. Schall's Brakes & Repairs, Inc.,* 725 A.2d 1232 (Pa.Super.1998); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 4469 (3d Ed. updated 2013) (stating that "[t]he most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose."). Moreover, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer,* —— U.S. ——, ——, 131

S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). As AvanuOne has not actually attacked the sufficiency of the substance of Mr. Madonna's successor liability claim by citing to any legal authority or even making any legal argument, the Court will not undertake to fashion an argument for it.

As to AvanuOne's contention calling into question the Court's jurisdiction over this matter, the Court has already addressed the question of subject matter jurisdiction in previous orders, and, apart from a bald statement questioning jurisdiction, in its current motion AvanuOne has not made any legal argument that would actually implicate the Court's jurisdiction over this matter. Thus, the Court will deny AvanuOne's motion.

## CONCLUSION

**\*6** For the foregoing reasons, the Court will deny AvanuOne's motion to dismiss and deny in part and grant in part Mr. Francisco's motion to dismiss. An appropriate Order follows.

*ORDER*

**AND NOW,** this 13th day of March, 2014, upon consideration of Defendant Gregory Francisco's Motion to Dismiss (Docket No. 31), Plaintiff's Opposition thereto (Docket No. 33), Defendant Avanuone LLC's Motion to Dismiss (Docket No. 32), Plaintiff's Opposition thereto (Docket No. 34), it is hereby **ORDERED** that:

1. Defendant Gregory Francisco's Motion (Docket No. 31) is **GRANTED in part and DENIED in part.** Count II of Plaintiff's Second Amended Complaint is **DISMISSED** without prejudice.

2. Defendant Avanuone LLC's Motion (Docket No. 32) is **DENIED.**

3. Plaintiff Christopher Madonna may file an amended complaint no later than 14 days from the date of this Order.

## All Citations

Not Reported in F.Supp.3d, 2014 WL 981568

---

## Footnotes

1    Mr. Francisco does seem to acknowledge that a veil-piercing claim that was timely and adequately pleaded would not be barred by claim preclusion. He insists, however, that any other claim seeking the same relief sought in the first action would be barred. The Court need not speculate as to what other claims would or would not be barred in this suit, however, because Mr. Madonna did bring a veil-piercing claim.

2    The Defendants understandably argue that the Second Amended Complaint tries to advance a fraud claim by repeated stating that Mr. Francisco defrauded Mr. Madonna. Certainly such allegations sound like Mr. Madonna is asserting a fraud claim, at least against Mr. Francisco. After oral argument on the previous round of motions to dismiss and after reviewing Mr. Madonna's opposition to the present motions, it does not appear that this is the case, however. To the extent that fraud-like allegations are pleaded, they may very well be relevant instead to the effort to try to pierce the corporate veil.

Mr. Francisco argues that there is no such thing as an enforcement action that does not include the judgment debtor as a party and, furthermore, that this cannot be an enforcement action because Mr. Madonna has not sought a writ of execution pursuant to Federal Rule of Civil Procedure 69. As to the first argument, if Mr. Madonna is able to present grounds sufficient to pierce the corporate veil or to demonstrate successor liability, the Defendants will stand in the same shoes as the Kinesis entities, making an enforcement action an appropriate vehicle. Indeed, although rare, there are reported Pennsylvania cases in which judgment creditors file independent lawsuits seeking to do just that. *See, e.g., Fletcher–Harlee Corp. v. Szymanski,* 936 A.2d 87, 96 (Pa.Super.2007) (action to enforce state court judgment by

2014 WL 981568

piercing the corporate veil filed against dominant shareholder); *cf. Essex Ins. Co. v. Miles,* Civil Action No. 10–3598, 2010 WL 5069871 (E.D.Pa. Dec.3, 2010) (stand-alone action to collect on a federal judgment by piercing the corporate veil). As to Rule 69, the judgment here is a state court judgment, not a federal court judgment, so even if Rule 69 would apply to a proceeding to pierce the corporate veil to enforce a federal judgment, Rule 69 does not apply to actions involving state court judgments. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 3011 (3d Ed. updated 2013) ("Rule 69 applies only to money judgments of the federal court.... Rule 69 has no application to state-court judgments.").

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

4

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

2022 WL 597356
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Harrison Lee RILEY, Plaintiff,
v.
TIMMONS CONSTRUCTION LLC, Ryan
Timmons and Pancho Timmons, Defendants.

Civil Action No. 21-286
|
Signed 02/28/2022

**Attorneys and Law Firms**

Joshua D. Baker, Timothy D. Berkebile, Metz Lewis Brodman Must O'Keefe LLC, Pittsburgh, PA, for Plaintiff.

James S. Malloy, Andrew P. Giel, Dingess, Foster, Luciana, Davidson, & Chleboski, LLP, Pittsburgh, PA, for Defendants Timmons Construction LLC, Ryan Timmons.

Julian E. Neiser, Spilman Thomas & Battle, PLLC, Pittsburgh, PA, for Defendant Pancho Timmons.

Re: ECF Nos. 23 and 25

**MEMORANDUM OPINION**

MAUREEN P. KELLY, UNITED STATES MAGISTRATE JUDGE

**\*1** In this action, Plaintiff Harrison Lee Riley ("Plaintiff") brings claims under Pennsylvania law arising out of a series of allegedly failed renovation projects undertaken by Defendants Timmons Construction LLC ("Timmons Construction"), Ryan Timmons and Pancho Timmons. ECF No. 21.

Presently before the Court is a Motion to Dismiss for Failure to State a Claim, Failure to Join a Party, or Alternatively, for a More Definite Statement filed by Defendant Pancho Timmons ("Motion to Dismiss"). ECF No. 25. Also before the Court is a Rule 12(b)(6) Motion to Dismiss Counts II-VI of Plaintiff's Amended Complaint for Failure to State a Claim filed by Defendants Timmons Construction and Ryan Timmons ("Motion to Dismiss"). ECF No. 23. For the following reasons, the Motions to Dismiss are granted in part and denied in part. [1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual allegations

Plaintiff is the sole member of Glass Beach Ventures, LLC ("Glass Beach"). ECF No. 21 ¶ 2. Glass Beach owns three residential investment properties located in Pittsburgh, Pennsylvania ("Properties"), which are in the process of renovation for rent or resale. Id.

Ryan Timmons owns and manages Timmons Construction, a renovation construction company. Id. ¶¶ 4-6. His brother, Pancho Timmons, is an employee or agent of Timmons Construction and managed Timmons Construction's projects in the Pittsburgh, Pennsylvania area. Id. ¶¶ 7-9.

Plaintiff discussed renovations to be performed on the Properties with Timmons Constructions in or around November 2019. Id. ¶ 12. Timmons Constructions provided separate statements of work with proposed pricing for each of the Properties ("Statements of Work"). Id. ¶ 19. During those discussions, Defendants knowingly or recklessly misrepresented that Timmons Construction "was an established full-service renovation construction company sufficiently experienced, knowledgeable, skilled, and capitalized to properly staff, manage, and perform renovation of residential investment properties in Pittsburgh, Pennsylvania." Id. ¶¶ 13, 15.

Based on these alleged misrepresentations, Plaintiff entered into three oral contracts with Timmons Construction, in which Timmons Construction agreed to perform the work set forth in the Statements of Work for the prices set forth in them ("Contracts"). Id. ¶¶ 14, 20. He also made "sizable" down payments for work to begin. Id. ¶ 17. Plaintiff later agreed to increase the scope of work and cost through three oral change orders. Id. ¶¶ 42, 45 and 48; ECF No. 21-2 at 2.

From the beginning, Timmons Construction allegedly mismanaged the projects by, among other things, failing to obtain necessary permits, failing to satisfy the time frames set forth in the Statement of Work (even when accounting for Governor Wolf's shutdown order in response to the COVID-19 pandemic), failing to properly track the use of funds paid by Plaintiff, and misappropriating those funds. ECF No. 21 ¶ 23.

**\*2** Between June and September 2020, Timmons Construction "acknowledged shortcomings in its performance," and it replaced Pancho Timmons as the project manager. Id. ¶ 24. Defendants falsely claimed their "shortcomings" were due to complications associated with the COVID-19 pandemic, and those issues could be resolved with increased cashflow. Id. ¶ 26. At some point, Defendants required Plaintiff to pay $15,000 a week to continue their work. Id. ¶ 15.

During the projects, Plaintiff claims that he continued to make payments or to modify the payment plans based on Defendants' misrepresentations that "certain work was completed, that such payments were due or otherwise necessary for work to continue, and that work was progressing at each of the Properties." Id. ¶¶ 22, 27, 31 and 33. Although Defendants claimed to require the funds for his projects, Plaintiff alleges that Defendants intended to use the funds for personal expenditures, to support other failing projects, or for use on something other than funding renovations on the Properties. Id. ¶¶ 18, 30.

In November 2020, Timmons Construction informed Plaintiff that it would be unable to complete the projects and suggested that Plaintiff hire a new contractor to do so. Id. ¶ 33. Plaintiff paid Timmons Construction $437,000 to complete the renovations. Id. ¶ 32. The value of the work performed by Timmons Constructions on the Properties is $135,500 or less. Id. ¶ 35. The estimated cost to complete the unfinished work and correct various deficiencies in the existing work product exceeds the prices set forth in the Statements of Work by over $140,000. Id. ¶ 37.

### B. Legal Claims
Based on these allegations, Plaintiff asserts these claims: Count I: Breach of Contract; Count II: Unjust Enrichment; Count III: Conversion; Count IV: Fraud/Fraudulent Inducement/Negligent Misrepresentation; Count V: Civil Conspiracy; Count VI: Piercing the Corporate Veil. Plaintiff asserts Count I only against Timmons Construction. He asserts Counts II through VI against all Defendants.

### C. Procedural History
Plaintiff filed his original Complaint on March 2, 2021. ECF No. 1. Defendant Pancho Timmons answered the Complaint. ECF No. 6.

The parties consented to Plaintiff filing an Amended Complaint. ECF No. 20. Plaintiff filed the operative Amended Complaint on June 24, 2021. ECF No. 21.

On July 15, 2021, Defendants filed the instant Motions to Dismiss and Briefs in Support. ECF Nos. 23, 24, 25 and 26. Plaintiff filed a Brief in Opposition to the Motions to Dismiss on August 13, 2021. ECF No. 34. Defendants Ryan Timmons and Timmons Construction then filed a Reply in support of their Motion to Dismiss, in which Pancho Timmons joined. ECF Nos. 36 and 37.

The Motions to Dismiss are now ripe for consideration.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)
In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 23 of 49

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

### B. Rule 12(e)

**\*3** Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) is part of the "district court's case-management arsenal," Twombly, 550 U.S. at 593 n. 13, that, along with the rest of Rule 12 and Rule 8, serves "to frame and govern [the] court's assessment of the quality of a pleading." Sony BMG Music Ent. v. Cloud, No. 08-1200, 2008 WL 3895895, at \*2 (E.D. Pa. Aug. 22, 2008). "A motion for a more definite statement under Rule 12(e) 'is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading.' " Id. (quoting Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967)).

"Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are 'highly disfavored.' " Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011) (quoting Hughes v. Smith, No. 03-cv-5035, 2005 WL 435226, at \*4 (E.D. Pa. Feb. 24, 2005)). As a result, such a motion generally will be granted " 'only if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading.' " Synagro-WWT, Inc. v. Rush Twp., 204 F. Supp. 2d 827, 849 (M.D. Pa. 2002).

## III. DISCUSSION

### A. Breach of Contract (Count I)

In Count I, Plaintiff asserts a breach of contract claim against Timmons Construction. In support of his Motion to Dismiss, Pancho Timmons argues that Plaintiff has alleged the existence of three oral contracts and change orders that were orally agreed to, but he does not sufficiently plead facts to establish the terms of those contracts. ECF No. 26 at 11.[2] Based on this, he argues that Plaintiff should be required to make a more definite statement. Id.

Upon review, Pancho Timmons' Motion to Dismiss is denied as to Count I. A motion for more definite statement should be granted when the pleading is so vague and ambiguous that the opposing party cannot respond in good faith without prejudice to itself. MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 736-37 (D.N.J. 2008). Here, the breach of contract claim is sufficiently pled. However, Plaintiff does not plead Count I against Pancho Timmons.

### B. Unjust Enrichment (Count II)

In Count II, Plaintiff pleads a claim for unjust enrichment, "only as an alternative" to his breach of contract claim in Count I. ECF No. 21 ¶ 78. Defendants argue that Count II should be dismissed because Plaintiff cannot maintain an unjust enrichment claim if the parties' relationship is founded on a written agreement or express contract. ECF No. 24 at 14; ECF No. 26 at 11. Because Plaintiff did not make payments to either Ryan or Pancho Timmons individually, and there are no allegations that Ryan Timmons made any promises in his individual capacity, they also argue this claim should be dismissed against these Defendants. ECF No. 24 at 16; ECF No. 26 at 11.

In response, Plaintiff argues that he properly pleads this claim in the alternative to his breach of contract claim. He argues that it would be premature to dismiss this claim, because Defendants have not yet affirmatively pleaded or otherwise conceded that the Contracts are enforceable. ECF No. 34 at 17. He does not specifically address whether this claim should be dismissed as to Ryan or Pancho Timmons based on their lack of personal involvement.

**\*4** A claim of unjust enrichment "is an equitable action which sounds in quasi-contract, a contract implied in law." Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 625 (E.D. Pa. 2010). To establish such a claim, Plaintiff must " 'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.' " Id. (quoting Bair v. Purcell, 500 F. Supp. 2d 468, 499 (M.D. Pa. 2007)).

Nonetheless, "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment." Vantage Learning (USA), LLC v. Edgenuity, Inc., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017). Even if a contract allegedly exists, however, a plaintiff may plead a claim for unjust enrichment in the alternative under Federal Rule of Civil Procedure 8(d)(2) if: (1) the contract at issue covers only a part of the relationship between the parties, or (2) the existence of a contract is uncertain or its validity is disputed by the parties. Id.

Upon review, Count II is dismissed as to Ryan Timmons and Pancho Timmons. Plaintiff only claims that he paid Timmons

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

Construction. Therefore, he does not state a claim for unjust enrichment as to the individual Defendants.

But it is premature to dismiss Count II against Timmons Construction. As discussed, Plaintiff may plead this claim in the alternative if there is any dispute over the existence, validity or scope of the contract. At this preliminary stage, it is not clear whether those issues will be contested. For these reasons, the Motions to Dismiss are granted relative to Count II against Ryan and Pancho Timmons and denied as to Count II against Timmons Construction.

### C. Conversion (Count III) and Fraud/Fraud in the Inducement/Negligent Misrepresentation (Count IV)

Defendants move to dismiss Plaintiff's tort claims in Counts III and IV based on the gist of the action doctrine and the economic loss rule. Under Pennsylvania law, the gist of the action doctrine and the economic loss rule are both "designed to maintain the conceptual distinction between breach of contract claims and tort claims." Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc., No. 18-1418, 2019 WL 1978429, at *5 (W.D. Pa. May 3, 2019) (quoting KBZ Communications Inc. v. CBE Techs. LLC, 634 F. App'x 908, 910-11 (3d Cir. 2015)). As this Court has recognized, "[t]he most recent decisions by the Supreme Court of Pennsylvania analyzing these legal doctrines generally recognize that parties to a contract may be subject to liability for tortious conduct which occurred during the pendency of the contract but preclude tort liability for a party's breach of the duties covered by the parties' contractual agreement." Id. (citing, e.g., Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014) (gist of the action doctrine); Dittman v. UPMC, 196 A.3d 1036, 1054 (Pa. 2018) (economic loss doctrine)).

The gist of the action doctrine "provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting Bruno, 106 A.3d at 53).

**\*5** To determine whether the gist of the action doctrine applies, "a court must identify the duty breached, because 'the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.' " Id. (quoting Bruno, 106 A.3d at 68). In reaching this determination, the "substance of the allegations compromising a claim are

of paramount importance," and the "mere labeling by the plaintiff of a claim as being in tort ... is not controlling." Id. (quoting Bruno, 106 A.3d at 68) (internal quotations omitted).

As the Pennsylvania Supreme Court explained, "[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that party would not ordinarily have been obligated to do but for the existence of the contract," then the claim should be treated as one for breach of contract. Bruno, 106 A.3d at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." Id.

As the United States Court of Appeals for the Third Circuit has observed, the gist of the action doctrine "cannot be captured by any precisely worded test"; it instead "call[s] for a fact-intensive judgment [by the court] as to the true nature of a claim." Williams v. Hilton Grp. PLC, 93 F. App'x 384, 386 (3d Cir. 2004). Courts should be cautious of dismissing claims under the gist of the action doctrine because the Federal Rules of Civil Procedure allow parties to plead alternative theories of liability. USG Ins. Servs., Inc. v. Bacon, No. 2:16-cv-1-24, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016).

As for the economic loss doctrine, it prohibits plaintiffs "from recovering in tort economic losses to which their entitlement flows only from a contract." Earl v. NVR, Inc., 990 F.3d 310, 312 (3d Cir. 2021) (quoting Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002)). Much like the gist of the action doctrine, courts consider whether the duty at issue "arises independently of any contractual duties between the parties." Battle Born Munitions, Inc., 2019 WL 1978429, at *5 (quoting Dittman, 196 A.3d at 1054).

Against this backdrop, the Court now considers the parties' arguments relative to Counts III and IV.

### 1. Conversion (Count III)

In support of the Motions to Dismiss, Defendants argue that Plaintiff's conversion claim should be dismissed under the gist of the action doctrine and economic loss doctrine because it is a recasting of his breach of contract claim. Defendants argue that this claim arises out of Timmons Construction's alleged

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

"nonperformance" of its obligations under the Contracts, and that Plaintiff requests the same amount of damages for conversion and breach of contract. ECF No. 24 at 5-8. He also seeks purely economic losses in tort for Defendants' non-performance. Id. at 8; ECF No. 26 at 10.

In response, Plaintiff argues that his conversion claim should not be dismissed because, if the Contracts are found to be unenforceable, there would be no duties created by the Contracts. ECF No. 34 at 9-10, 12. As a result, he argues it is premature to dismiss this claim.

"Conversion is 'the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification.' " Takeda Pharm. USA, Inc. v. Spireas, No. 17-0452, 2017 WL 4401988, at *18 (E.D. Pa. Oct. 3, 2017) (quoting Brown & Brown, 745 F. Supp. 2d at 622). When plaintiff's allegations " 'reveal merely a damage claim for breach of contract,' plaintiff has not pled a colorable claim for conversion." Id. (quoting Brown & Brown, 745 F. Supp. 2d at 622). Such claims are properly dismissed under the gist of the action doctrine when "the alleged entitlement to the chattel arises solely from the contract between the parties." Id. (quoting Brown & Brown, 745 F. Supp. 2d at 622); see also Murphy v. Mid East Oil Co., No. 06-1343, 2007 WL 527715, at *5-6 (W.D. Pa. Feb. 14, 2007) (dismissing conversion claim because it was dependent on the defendant's noncompliance with the terms of the agreement).

 *6  Upon review, the Court finds that Count III should be dismissed. Plaintiff's claim for conversion arises out of Defendants' alleged non-performance of their contractual obligations. Because this claim arises out of the same facts as Plaintiff's breach of contract claim, it is barred by the gist of the action doctrine. See, e.g., Brezinski v. Widener Univ., No. 20-cv-4939, 2022 WL 267898, at *6 (E.D. Pa. Jan. 28, 2022) ("Claims for conversion have been consistently disallowed where such claims are based on the same facts as the contract claim.") (citing Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 684 (Pa. Super. Ct. 2003)). Plaintiff also only seeks economic damages for the alleged loss of the benefit of the bargain with Timmons Construction. As a result, the gist of the action doctrine and economic loss rule bar Plaintiff's claim for conversion.

"If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515

F.3d at 236. Because Plaintiff's conversion claim arises out of Defendants' contractually based duties, for the reasons discussed, however, the Court finds that granting leave to amend would be futile. Therefore, the Motion to Dismiss to Count III is granted with prejudice. [3]

### 2. Fraud/fraud in the inducement/ negligent misrepresentation (Count IV)

As to Count IV, Defendants argue this claim is also an improper recasting of Plaintiff's breach of contract claim in Count I, and it should be dismissed pursuant the gist of the action doctrine and economic loss rule. Defendants argue that Plaintiff only seeks economic damages, and his fraud allegations arise out of the alleged non-performance of the contract or misrepresentations similar to what the Pennsylvania Superior Court dismissed under the gist of the action doctrine in eToll, Inc. v. Elias/Savion Advertising Inc., 811 A.2d 10 (Pa. Super. Ct. 2002). ECF No. 24 at 5-9; ECF No. 26 at 9-11. Defendants also argue this claim should be dismissed because it is not sufficiently pleaded under Federal Rule of Civil Procedure 9(b). ECF No. 24 at 9; ECF No. 26 at 4.

In response, Plaintiff argues that it is premature to dismiss this claim, because the Contracts could be found to be unenforceable. ECF No. 34 at 9. He also argues that the fraudulent misrepresentations in Count IV, especially any allegations of fraudulent inducement, arise out of a societal obligation not to mislead, as opposed to breach of contractual duties. Id. at 8, 11. To the extent that Defendants argue his claim is insufficiently specific, he contends that the allegations sufficiently place Defendants on notice of their alleged misconduct. Id. at 13.

In his Amended Complaint, Plaintiff claims in Count IV that Defendants knowingly or recklessly misrepresented certain facts to induce him to enter the contracts, keep making payments under the contracts, and to modify the payment terms. ECF No. 21 ¶¶ 90-100.

In particular, Plaintiff relies on four alleged misrepresentations:

> *7  1. Defendants, individually and collectively, represented that Timmons Construction was an established full-service renovation construction company sufficiently experienced, knowledgeable,

2022 WL 597356

skilled, and capitalized to properly staff, manage and perform renovation of residential investment properties in Pittsburgh, Pennsylvania.

2. Defendants ... represented that [Timmons Construction's] shortcomings on the projects resulted from the COVID-19 pandemic and that such shortcomings could be overcome with increased cashflow.

3. Timmons Construction, by and through Ryan and Pancho Timmons, made material misrepresentations of fact regarding the amount of work completed on the Properties, that payments were due for such work or otherwise necessary for work to proceed, and the use of payments by Plaintiff.

4. Timmons Construction represented that it was entitled to payment for work which was not complete and that payments made by Plaintiff were used in performing the work set forth in the Statements of Work.

Id. ¶¶ 90, 93.

Because Count IV sounds in fraud, this claim "must satisfy the 'stringent' Rule 9(b) requirements for particularity." Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 (3d Cir. 2015). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As the United States Court of Appeals for the Third Circuit has explained, this rule requires plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Travelers Indem. Co., 620 F. App'x at 85 (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "Although allegations of time, date or place satisfy the particularity requirements, a plaintiff can also satisfy the pleading requirements by pleading with a 'degree or precision or some measure of substantiation into the fraud allegation.' " Mikula v. C.R. Bard, Inc., No. 2:21-cv-01307, 2021 WL 5989130, at *7 (W.D. Pa. Dec. 17, 2021) (quoting Kester v. Zimmer Holdings, No. 2:10-cv-00523, 2010 WL 2696467, at * 12 (W.D. Pa. June 16, 2010); Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)). At a minimum,

plaintiff must identify "who made a representation to whom and the general content of the misrepresentation." Travelers Indem. Co., 620 F. App'x at 85 (quoting Lum, 361 F.3d at 224).

Upon review, the Court finds that Count IV should be dismissed because it is not sufficiently pleaded. To begin with, Plaintiff has improperly combined several causes of action into one, so it is not clear whether he claims that each misrepresentation was negligently made, fraudulently made, or both.

As for the specific misrepresentations, Plaintiff does not include sufficient detail to satisfy Rule 9(b). The first misrepresentation concerns Defendants' qualifications, and Plaintiff claims that Defendants "individually and collectively" made these representations in or about November 2019. The Court cannot reasonably determine, however, who specifically made the representations, what those misrepresentations were (in a concrete sense, rather than puffery), or why they were false. See, e.g., Billy Casper Golf, LLC v. RG Servs., LLC, No. 1:19-cv-01420, 2020 WL 4206242, at *3 (M.D. Pa. July 22, 2020).

**\*8** The second, third and fourth misrepresentations concern the quality and extent of Defendants' work under the contract, and whether further payments were due or required. Again, Plaintiff does not provide enough context. There is no clear indication of when or where these statements occurred, who specifically made them, or what specifically Defendants claimed to have accomplished that was not true. Because Plaintiff's Amended Complaint lacks these details, for example, it is not clear which statements allegedly induced him to modify the terms of his agreements, or to what extent Pancho Timmons, who left the project in September 2020, was allegedly involved. Thus, Count IV is dismissed.

Although Defendants argue that Plaintiff's claim is nevertheless barred by the gist of the action doctrine or economic loss rule, the Court cannot conclude that Plaintiff would be unable to state any plausible claim. To the extent that Plaintiff claims that Defendants fraudulently induced him to enter into or modify the contracts, for example, Defendants' breach might arise out of non-contractual duties. See, e.g., SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183 (3d Cir. 2022) ("[A] precontractual duty not to deceive through misrepresentation or concealment exists independently of a later-created contract"). For these reasons, the Court grants the Motion to Dismiss Count IV. That said, Count IV is

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

dismissed without prejudice, and Plaintiff will be granted leave to amend as appropriate.

### D. Civil Conspiracy (Count V)

In support of the Motions to Dismiss, Defendants argue that Plaintiff fails to state a conspiracy claim because a civil conspiracy claim must be supported by a valid underlying tort claim. ECF No. 24 at 10. Because Plaintiff does not plead any viable tort claim, Defendants argue, Count V should be dismissed. Id. Defendants also argue that Plaintiff fails to state a claim because he does not plead facts demonstrating proof of malice, and he relies on conclusory allegations of Defendants' agreement to conspire. ECF No. 26 at 10; ECF No. 24 at 11 n. 2.

In response, Plaintiff refers the Court to his argument that his underlying tort claims in Counts III and IV should not be dismissed. ECF No. 34 at 14. He also argues that conspiracy must usually be inferred from the circumstances, and he sufficiently pleads facts giving rise to such an inference. Id. at 13-14.

Upon review, the Court agrees that Count IV should be dismissed. Under Pennsylvania law, a claim for civil conspiracy must be supported by a valid underlying tort. Kist v. Fatula, No. 3:2006-67, 2007 WL 2404721, at *9 (W.D. Pa. Aug. 17, 2007) ("[I]n Pennsylvania, success on a claim for civil conspiracy is predicated on the existence of the underlying tort; if the underlying tort is found not to exist, the related claim for civil conspiracy to commit that tort necessarily fails."). Because Plaintiff's tort claims in Counts III and IV are dismissed for the reasons discussed, his conspiracy claim is also properly dismissed.

Given the Court's previous finding that leave to amend should be granted relative to Count IV, however, Plaintiff also will be granted leave to re-plead Count IV, as appropriate. As a result, the Motion to Dismiss Count IV is granted without prejudice.

### E. Piercing the Corporate Veil (Count VI)

As for Plaintiff's veil-piercing claim in Count VI, Defendants argues this claim should be dismissed because Plaintiff simply relies on legal conclusions without pleading sufficient facts. ECF No. 24 at 11-12. Pancho Timmons also argues that he did not have ownership or control of Timmons Construction, so there is no basis to hold him personally liable if the corporate veil is pierced. ECF No. 26 at 13.

**\*9** In response, Plaintiff argues that Ryan and Pancho Timmons both used the corporate form of Timmons Construction to pursue fraudulent and illegal activities. ECF No. 34 at 16. He refers the Court to allegations that Timmons Constructions was undercapitalized, failed to adhere to corporate formalities, that it intermingled its assets with Ryan and Pancho Timmons' assets, and that Defendants engaged in fraudulent activities. Id. He also relies on an allegation made by a plaintiff in a separate lawsuit that Ryan Timmons admitted to using funds for personal use. Id. Finally, Plaintiff argues that it would be unjust to allow those who hold ownership interests in Timmons Construction, "including Ryan Timmons and, perhaps, Pancho Timmons" to escape the consequences of their actions. Id. at 17.

Generally, "a shareholder is not personally liable to perform corporate obligations." Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994). "Piercing the corporate veil 'is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation.' " Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 576 (3d Cir. 2018) (quoting In re Blastein, 192 F.3d 88, 100 (3d Cir. 1999)).

Under Pennsylvania law, there is a "strong presumption" against piercing the corporate veil. Mortimer v. McCool, 255 A.3d 261, 268 (Pa. 2021) (citing Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)). Thus, "[a]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." Id. (quoting Wedner v. Unemployment Bd. of Rev., 296 A.2d 792, 794 (Pa. 1972)).

The Supreme Court of Pennsylvania has held that the "corporate form may be disregarded 'whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests.' " Id. (quoting Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978)). Courts consider these factors for a piercing inquiry: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetuate a fraud." Id. (quoting Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)). Or, in other words, "the evidence must ultimately show that the corporation was 'nothing more than a sham used to disguise [the shareholders'] use of its assets for [their] own benefit in fraud

Case 1:26-cv-01238-JKM  Document 14-1  Filed 08/10/26  Page 28 of 49

Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)

2022 WL 597356

of its creditors." Clientron Corp., 894 F.3d at 576 (quoting Blatstein, 192 F.3d at 100).

Upon review, Plaintiff claims that Defendants intermingled assets, undercapitalized, failed to adhere to corporate formalities, and fraudulently solicited funds through Timmons Construction for personal use. See, e.g., ECF No. 21 ¶¶ 30, 109-111. At this preliminary stage, the Court finds that Plaintiff sufficiently pleads a request to pierce the corporate veil. Following discovery, this issue may be considered at the summary judgment stage of the case, if appropriate. Therefore, the Motion to Dismiss Count VI, on this basis, is denied.

### F. Failure to Join an Indispensable Party or Lack of Standing

In support of its Motion to Dismiss, Pancho Timmons argues that Glass Beach should be joined as an indispensable party to this action under Federal Rule of Civil Procedure 19 because it owns the Properties. ECF No. 26 at 3. If Glass Beach is not joined, he argues, Pancho Timmons may be at risk of incurring double, multiple, or otherwise inconsistent obligations. Id. "[I]f nothing else," he argues, a more definite statement is needed to determine whether Plaintiff does, in fact, have standing to bring this claim. Id.

 **\*10**  In response, Plaintiff argues that he is not bringing this action because he is the sole member of Glass Beach. Instead, he claims that he personally entered into the Contracts with Timmons Construction, made the payments personally, and is identified as the recipient of the Statements of Work on the face of those documents. ECF No. 34 at 18. As a result, he argues there is no basis to find that Glass Beach must be joined or that Plaintiff lacks standing. Id. at 19.

Under Federal Rule of Civil Procedure 19(a), "a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Based on the above, the sole remaining claims are breach of contract and unjust enrichment claims against Timmons Construction. Plaintiff claims that he personally entered into the Contracts with, and paid, Timmons Construction. Plaintiff therefore has standing to pursue this claim. Because Glass Beach is not an alleged party to the Contracts and did not allegedly make any payments at issue, there is also no indication that in Glass Beach's absence the Court will be unable to accord complete relief. Therefore, the Motion to Dismiss is denied on this basis.

### G. Punitive Damages

Finally, Defendants also contend that Plaintiff's claim for punitive damages should be dismissed. ECF No. 24 at 13-14. Because Plaintiff's breach of contract and unjust enrichment claims are the only remaining substantive claims, the Court finds that it is appropriate to dismiss Plaintiff's claim for punitive damages. DiGregorio v. Keystone Health Plan E., 840 A.2d 361, 370 (Pa. Super. Ct. 2003) (plaintiff cannot recover punitive damages for an action sounding solely in breach of contract); Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co., 907 F. Supp. 2d 673, 680 n. 7 (E.D. Pa. 2012) (unjust enrichment is a "quasi-contract" remedy for which punitive damages are unavailable). As a result, the Motion to Dismiss is granted relative to Plaintiff's claim for punitive damages.

### IV. CONCLUSION

For these reasons, Defendants' Motions to Dismiss are granted in part and denied in part. The Motions to Dismiss are granted relative to Count II against Pancho Timmons and Ryan Timmons, Counts III, IV, and V against all Defendants, and for Plaintiff's request for punitive damages.

Count III is dismissed with prejudice. Counts II (as to Ryan and Pancho Timmons, only), IV and V are dismissed without prejudice, and Plaintiff will be granted leave to amend, as appropriate, on or before March 14, 2022.

The Motions to Dismiss are denied in all other respects.

**Riley v. Timmons Construction LLC, Not Reported in Fed. Supp. (2022)**

2022 WL 597356

An appropriate Order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 597356

---

## Footnotes

1    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 32, 33 and 35.

2    Timmons Construction and Ryan Timmons do not move to dismiss Count I, noting they do not dispute the existence of a valid contract. These Defendants assert, however, that the specific terms of the Contracts will be the subject of further discovery and litigation. ECF No. 24 at 15.

3    Although Plaintiff does not claim that Pancho Timmons or Ryan Timmons were parties to the Contracts, "[t]he aggrieved contracting party cannot 'detach' employees from their status as agencies of the other contracting party by holding them liable in tort for their company's contractual breach," and "Pennsylvania courts have repeatedly held that employees receive coextensive protection from the gist of the action doctrine." KBZ Communications Inc. v. CBE Technologies LLC, 634 F. App'x 908, 911-12 (3d Cir. 2015). As a result, the individual defendants may rely on the gist of the action doctrine, even though the purported Contracts were between Plaintiff and Timmons Construction.

---

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

5

Thomas v. TransCore, LP., Not Reported in Fed. Supp. (2024)

2024 WL 4820782

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 31 of 49

2024 WL 4820782
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Julie E. THOMAS (on Behalf of Herself
and Those Similarly Situated), Plaintiff,
v.
TRANSCORE, LP., et al., Defendants.

CIVIL ACTION NO. 3:21-CV-1040
|
Signed November 18, 2024

**Attorneys and Law Firms**

Carmen A. De Gisi, Luke T. Pepper, De Gisi Law Group, LLC, Lafayette Hill, PA, Daniel C. Levin, Levin Sedran & Berman, Philadelphia, PA, for Plaintiff.

Ty E. Howard, Lela Hollabaugh, Bradley Arant Boult Cummings, Nashville, TN, for Defendant TransCore, LP.

Brian J. Slipakoff, Leah Ariel Mintz, Duane Morris LLP, Philadelphia, PA, Robert L. Byer, Duane Morris LLP, Pittsburgh, PA, for Defendant Pennsylvania Turnpike Commission.

### MEMORANDUM

JOSEPH F. SAPORITO, JR., United States District Judge

**\*1** On April 28, 2021, the plaintiff Julie Thomas filed a class action complaint against the defendants Pennsylvania Turnpike Commission ("Commission") and TransCore for various claims concerning improperly charged "V-Tolls," a flat toll rate utilized in situations where a driver's transponder fails to be identified as an E-ZPass customer. (Doc. 1). On May 19, 2023, the plaintiff filed an amended complaint against TransCore for (1) a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count I); (2) fraudulent concealment (Count II); (3) fraudulent misrepresentation (Count III); (4) breach of contract (Count VI); (5) conversion (Count V); and (6) unjust enrichment (Count VI). (Doc. 43). It further alleged (1) unjust enrichment (Count VI) and (2) negligent conversion (Count VII) claims against the Commission. *Id.* The defendants, in turn, moved to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. (Docs. 48, 50).

On August 29, 2024, the Court granted the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 65). Specifically, the Court dismissed Counts I through III and VIII without prejudice and Counts IV through VII with prejudice. *Id.* It additionally granted the plaintiff leave to amend within thirty days of the Order. *Id.* The plaintiff, however, filed a motion seeking leave to amend to replead the claims the Court dismissed with prejudice on September 27, 2024. (Doc. 66). This matter is now ripe.

### I. Legal Standard

It is first important to discuss which Federal Rules of Civil Procedure apply to the current motion. The defendants argue that the plaintiff's motion to amend is, in actuality, a motion for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure (Docs. 68, 69). In turn, Local Rule 7.10 specifies that a motion for reconsideration must be filed within 14 days of the challenged decision. L.R. 7.10. The defendants thus argue the plaintiff's challenge is time-barred, as the filing occurred approximately twenty-nine days after the Court's original granting of the defendants' motions to dismiss. (Doc. 65).

Rule 60(b) does not apply in this instance, however, because the order at issue is not a final judgment or order. *See* Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party or its legal representatives from a *final* judgment, order, or proceeding"). Instead, the plaintiff's motion should be considered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as it deals with the reconsideration of an interlocutory order. *See Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b).").

Under Rule 54(b), "[a]n order that does not dispose of every claim in an action 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.' " *Clark Distrib. Sys., Inc. v. ALG Direct, Inc.*, 12 F. Supp. 3d 702, 717 (M.D. Pa. 2014) (quoting Fed. R. Civ. P. 54(b)). Here, the plaintiff filed a motion for leave to amend. (Doc. 66). Leave should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 32 of 49

Thomas v. TransCore, LP., Not Reported in Fed. Supp. (2024)
2024 WL 4820782

opposite party by virtue of the allowance of the amendment, futility of amendment, etc.". *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Futility of amendment means that the complaint as amended does not state a claim upon which relief can be granted." *Doe v. Div. of Youth and Fam. Servs.*, 148 F.Supp.2d 462, 477 (D.N.J. 2001). Moreover, an amendment is futile if "a proposed amended complaint is 'frivolous or advances a claim or defense that is legally insufficient on its face.' " *Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (quoting *Thomas v. SmithKline Beecham Corp.*, No. 00-2948, 2002 WL 32341172, at *3 (E.D. Pa. Sept. 5, 2002)). Therefore, the newly asserted claim must appear to be "sufficiently well-grounded in fact or law." *Doe*, 148 F. Supp. 2d at 477.

## II. Discussion

**\*2** The plaintiff asserts that her previously-dismissed claims with prejudice are now amended and sufficiently well-grounded in fact and law. These claims are as follows: (1) breach of contract against TransCore (Count IV); (2) conversion against TransCore (Count V); (3) unjust enrichment against TransCore and the Commission; and (4) negligent conversion against the Commission (Count VII).

### A. Breach of Contract Against TransCore
The Court previously dismissed the plaintiff's breach of contract claim against TransCore, holding that the plaintiff did not allege privity with TransCore and that TransCore was not the intended third-party beneficiary of a contract between the plaintiff and the Commission. (Doc. 65). The plaintiff now contends that its amendment cures those deficiencies by alleging that the plaintiff, who is in privity with the Commission, is the intended third-party beneficiary of the contracts between TransCore and the Commission to administer the E-ZPass system. (Doc. 66). The defendants conversely argue that the plaintiff has failed to plead facts to support she is a third-party beneficiary. We agree with the defendants.

A contract creates a third-party beneficiary under Pennsylvania law when its language affirmatively indicates mutual intent to benefit that third-party. *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527 (E.D. Pa. 2011). However, as an exception to that rule, Pennsylvania has adopted § 302 of the Restatement (Second) of Contracts, under which a contract can create a third-party beneficiary in the absence of language demonstrating mutual intent. *Id.* A party may attain third-

party beneficiary status under § 302 if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 530 Pa. 366, 371, 609 A.2d 147, 150 (1992) (citing Restatement (Second) of Contracts § 302).

The plaintiff has not provided proof of any language affirmatively indicating mutual intent to benefit herself or others in similar situations. The plaintiff has attached a copy of the Commission's CSC/VPC Agreement with TransCore in support of her claim that she is an intended third-party beneficiary. The contract, however, expressly rejects any third-party beneficiaries, as it states "[n]othing provided herein will create any rights in any third party as provided in the Agreement or any obligation on the part of the Commissioner to any third party." Numerous Third Circuit courts have permitted parties to a contract to expressly disclaim the existence of intended third-party beneficiaries. *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. CV 23-1236, 2024 WL 4160349, at *7 (E.D. Pa. Sept. 11, 2024); *see Pennsylvania State Emps. Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 324 (M.D. Pa. 2005) ("While section 302 recognizes that a nonsignatory to a contract can be an intended beneficiary of the contract if certain conditions are met, it recognizes the right of the contracting parties to exclude third parties from invoking the benefits of their agreement."); *see also Gannon v. Baldt Anchor & Chain*, 459 F. Supp. 457, 459 (E.D. Pa.), *aff'd*, 588 F.2d 820 (3d Cir. 1978) (finding that an employee was not a third-party beneficiary when an agreement expressly excluded an employee in the plaintiff's category). Indeed, these courts have even upheld contractual express disclaimers when additional language may have implied a third-party beneficiary. *See Gee v. Eberble*, 279 Pa. Super. 101, 110, 420 A.2d 1050, 1055 n.4 (1980) (holding that an express disclaimer defeated a third-party beneficiary claim despite other contract language from which intent to benefit claimant could be inferred). For this reason, we reject the plaintiff's third-party beneficiary argument due to the contract's express disclaimer. The disclaimer precludes us from considering a potential third-party beneficiary claim under § 302. We rule that the complaint does not state a claim upon which relief can be granted and an amendment to that claim proves futile.

### B. Conversion Against TransCore
**\*3** The Court previously dismissed the plaintiff's conversion claim against TransCore with prejudice. (Doc. 65).

2024 WL 4820782

"Conversion occurs when a party deprives the owner from his right of or use of or possession of a chattel, without the owner's consent and without lawful justification." *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 300 (1993). The Court found that the plaintiff had affirmatively agreed and consented to tolls and fines being charged in the E-ZPass process, and therefore, could not successfully plead a conversion claim against TransCore. (Doc. 65). The plaintiff's amended complaint now alleges that TransCore and the Commission had no authority to collect penalties or fees in addition to the toll charged, and thus, the plaintiff did not consent to the withdrawal of funds. (Doc. 66).

Nevertheless, the plaintiff's amended complaint seemingly ignores the Court's previous holding in its original dismissal of the claim. The plaintiff's contract with the defendant specifically shows her consent to the terms of the E-ZPass contract where she expressly agreed to pay the fines and tolls stemming from her driving, regardless of whether the proper toll registered. As the Court held before, because an owner's consent defeats a claim for conversion, the plaintiff's amended complaint has failed to state a plausible claim.

### C. Unjust Enrichment Against the Commission and TransCore

The Court previously dismissed with prejudice both of the plaintiff's claims for unjust enrichment against the defendants for different reasons. It first turned to the plaintiff's claim against the Commission. It noted that a claim of unjust enrichment will not lie where a valid contract or written agreement exists between the parties. (Doc. 65); *see Villoresi v. Femminella*, 2004 Pa. Super. 256, 856 A.2d 78, 84–85 (2004) (emphasizing where "the parties' transaction was fully delineated within the confines of the written [contract] the existence of the written agreement would confine [the plaintiff] to a contract remedy and preclude a claim of quasi-contract."). In addition, the Court further articulated that "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014). The Court ultimately found that because the plaintiff neither questioned the existence of a contract nor alleged conduct outside the bounds of the contract, the unjust enrichment claim against the Commission should be dismissed with prejudice.

The plaintiff has amended her complaint to allege that the "authority under the parties' contract to assess V-Tolls is

disputed-and therefore, whether a contract governs Plaintiff's claims is disputed." (Doc. 66). Thus, she alleges, the disputed authority leads to a potential unjust enrichment claim. *Id.* This amended claim, however, does not resolve the deficiencies seen in the plaintiff's first complaint.

First, while the plaintiff may dispute the authority given to the defendants by terms of the contract, the plaintiff does not dispute the prerequisite existence of the contract itself. As the Court previously held, an unjust enrichment claim is only available when the validity of a contract is disputed, not the terms of the contract. *See Grudkowski*, 556 F. App'x at 170 n.8 ("[P]leading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy"); *see also Heritage Valley Health Sys., Inc. v. Nuance Commc'ns, Inc.*, 479 F. Supp. 3d 175, 179 (W.D. Pa. 2020) (dismissing an unjust enrichment claim due to the plaintiff's claim falling to contract interpretation).

**\*4** Moreover, the plaintiff has failed to amend her complaint to identify any conduct outside the bounds of the contract. As the Court held, the plaintiff expressly agreed to pay the fines and tolls stemming from her driving, regardless of whether the proper toll registered. She has additionally acknowledged "a valid and enforceable Agreement between the Plaintiff and the Commission." (Doc. 66). Therefore, we find that the plaintiff has not cured any of her claim's deficiencies, and thus, she cannot support a claim of unjust enrichment against the Committee.

Regarding the plaintiff's claim against TransCore, the Court additionally dismissed the claim with prejudice as the plaintiff "ha[d] not plausibly pled that TransCore was unjustly enriched by its collection of fees on behalf of the Commission." (Doc. 65). It identified that the plaintiff made payments through her E-ZPass account due to her contractual duty, and "[t]he notion that TransCore may have somehow incidentally benefitted from Plaintiff fulfilling her duties is not sufficient to sustain an unjust enrichment claim." (Doc. 65). The plaintiff has amended her complaint to allege that "Trans[C]ore and the Commission split the proceeds from the unauthorized fees and penalties ... pursuant to the partnership agreements between them." (Doc. 66). While we do agree that the plaintiff's allegations of splitting the proceeds from unauthorized fees and penalties fairs far better than its original broad allegation that TransCore "retains and is enriched by shares" of fees (Doc. 43), we find that it still is not sufficient enough to sustain an unjust enrichment claim.

First, the plaintiff still has not combatted the Court's previous acknowledgment that the plaintiff made payments through her E-ZPass account due to a contractual duty, one that allowed the Court to dismiss with prejudice. As we have stated prior, the plaintiff agreed to the terms of her contract and paid the fees pursuant to the contract. *See Pa. State Emps. Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 331 (M.D. Pa. 2005) (holding that an unjust enrichment claim failed because the plaintiff was "fulfilling its own [contractual] obligations.").

Second, the Court additionally held that the plaintiff did not allege that TransCore itself retained the monies collected, and the plaintiff's amended allegations do not dispute this holding. The new complaint merely describes how the money was allegedly spent, rather than addressing the previously-mentioned possession deficiency. Indeed, the contract itself highlights that TransCore is paid "for Work and Deliverables on a cost-plus-net-fee basis, subject to an annual not-to-exceed amount," rather than a proportional amount that would benefit from a fee-splitting system as the plaintiff alleges. The plaintiff cannot point to any "documents incorporated into the complaint" to substantiate its allegation, *Tellabs, Inv. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and has offered no supporting evidence contrary to the terms of the contract to suggest a reasonable inference of her allegations of overcharging and fee-splitting. For these reasons, the plaintiff's claim suffers from the same deficiencies as its first complaint, and thus, the claim will be dismissed.

### D. Negligent Conversion Against the Commission

The plaintiff finally alleges a claim of negligent conversion against the Commission. The Court previously found that plaintiff's claim for negligence conversion failed because the plaintiff "appears to allege only intentional conduct on the part of the Commission...." (Doc. 65). For this reason, it held that "the claim is more properly one for the intentional tort of conversion, and the Commonwealth has not waived sovereign immunity for such claims." *Id*. The plaintiff has since amended her complaint to allege numerous negligent acts by the Commission in the oversight, policies, and implementation of the E-ZPass system. (Doc. 66). We hold that the plaintiff's claim fails because it does not fall within an exception of sovereign immunity and thus cannot overcome the Commission's sovereign immunity.

**\*5** Very few cases have come before the Court concerning a negligent conversion claim and thus, there is very little

guidance on the matter. In general, conversion does not require proof of a specific intent to commit a wrong. *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 2014 Pa. Super 278, 107 A.3d 114, 119 (2014). "A claim of negligent conversion will lie under 42 Pa. C.S. § 8522(b)(3), which provides an exception to sovereign immunity for claims of negligence arising from '[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including ... property of persons held by a Commonwealth agency....' " *Borrero-Bejerano v. Dep't of Corr.*, No. 453 C.D. 2018, 2019 WL 489835, at \*5 (Pa. Commw. Ct. Feb. 8, 2019) (quoting 42 Pa. C. S. § 8522(b)(3)). However, to invoke this exception, "the personal property possessed or controlled by the Commonwealth party must directly cause, and not merely facilitate, the plaintiff's injuries." *Mazur v. Cuthbert*, 186 A.3d 490, 498 (Pa. Commw. Ct. 2018) (citing *Pa. State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Cmmw. Ct. 2003)). We find that even taking the plaintiff's allegations as true, the Commonwealth's actions merely facilitated, and did not cause, the plaintiff's injuries.

The question at hand is whether the plaintiff's allegations, those that accuse the Commission of failing to "conduct any meaningful review or audits" or "failing to provide any meaning oversight" of TransCore, fit within the same category of those potential negligent conversion claims recognized by the Court. The answer is no. Pennsylvania courts have recognized that negligent conversion claims can concern those for monetary damages resulting directly from the negligent destruction or confiscation of personal property by Commonwealth officials. *See Shore v. Pennsylvania Dep't of Corr.*, 168 A.3d 374, 385 n.6 (Pa. Commw. Ct. 2017) (observing that good faith negligence in the destruction or confiscation of an inmate's photographs by state officials may invoke the personal property exception); *see also Borrero-Bejerano*, 2019 WL 489835 at \*7 (holding that a plaintiff could proceed with his claim that prison officials negligently contributed to the loss of his watch). The plaintiff has not alleged, however, that the Commonwealth directly destroyed or confiscated her property as seen in *Shore* or *Borrero-Bejerano*.

Instead, she alleges that the Commission's negligence concerning TransCore and its devices caused the confiscation of property, an allegation that fits more neatly in those receiving sovereign immunity by the Court. First, it is well settled that "alleged[ly] negligent, erroneous[,] and inaccurate examinations by a Commonwealth agency ... are outside the exceptions to sovereign immunity." *Bufford v. Pa. Dep't of*

*Transp.*, 670 A.2d 751, 754 (Pa. Commw. Ct. 1996). The plaintiff alleges that the Commission's failure to participate in the oversight of monitoring, operating, or maintaining of the E-ZPass system contributed to the confiscating of its property. (Doc 66). In other words, the plaintiff maintains that the defendant's failure to examine caused her injuries. We hold that the failure to examine falls outside the exceptions to sovereign immunity for the same reason as erroneous, negligent, or inaccurate examinations: these reports (or lack of) merely facilitate an additional action that proves the direct cause of plaintiffs' injuries; they are not the cause themselves.

For example, in *Bufford v. Department of Transportation*, the plaintiff was detained by the police after they discovered that the plaintiff was driving with a suspended license. *Bufford*, 670 A.2d at 754. The plaintiff's driving privileges, however, had been suspended incorrectly and the plaintiff initiated litigation alleging that the Pennsylvania Department of Transportation had suspended his license negligently. *Id.* The court ultimately ruled that the personal property exception was not "a mechanism for the recovery of damages inflicted by administrative decision making and the negligent recordation of any information...." *Id.* at 755. It found it was the detaining itself that caused the direct injuries, not the Commission's incorrect examination of the plaintiff's driving record and administrative decision to suspend the license. The Commission's action merely facilitated a separate action that cause the alleged injuries.

**\*6** Similarly, in *Garanin v. Scranton Housing Authority*, the plaintiff alleged negligence by the Scranton Housing Authority for the plaintiff's reliance on an inaccurate inspection report from the defendant and its employee. *Garanin v. Scranton Hous. Auth.*, 286 A.3d 401, 402 (Pa. Commw. Ct. 2022). The inspection revealed no problems with the heating system, indicating that the property was suitable as Section 8 housing. *Id.* Therefore, the plaintiff obtained a property insurance policy from Erie Insurance based on that reliance, and when he later asserted a claim for damage to the property, the insurance company denied the claim with proof that the heating system was damaged before the plaintiff purchased the policy. *Id.* The court ruled that the erroneous report merely facilitated the plaintiff's injuries and fell outside the personal property exception to sovereign immunity. *Id.* Like *Bufford*, it was the third-party's rejection of an insurance claim, not the Housing Authority's erroneous inspection, that caused the plaintiff's injuries.

Here, the plaintiff's allegations mimic those in *Bufford* and *Garanin*. The plaintiff argues that the defendant's failure to inspect caused the incorrect confiscation of the plaintiff's funds. Even assuming the plaintiff's allegations as true, the defendant's actions still did not cause the plaintiff's injuries and thus fall outside the statutory exceptions for sovereign immunity. Indeed, the plaintiff takes issue with TransCore's equipment, not the Commission's administrative decisions, as the equipment itself allegedly failed to read her transponder, resulting in the withdrawal of funds. The defendant's alleged failure to "conduct any meaningful review or audits" or "provide any meaning oversight" of TransCore's systems merely facilitated the third-party's action; it did not cause it.

### III. Conclusion

For these reasons, the plaintiff's leave to amend those counts in the complaint which were dismissed with prejudice will be denied. An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4820782

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

6

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 37 of 49

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

2021 WL 1734845
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

TRAY, INC.

v.

DEVON INTERNATIONAL GROUP, INC., et al.

CIVIL ACTION NO. 21-1254
|
Filed 05/03/2021

**Attorneys and Law Firms**

Shawn McBrearty, Casey Green, Sidkoff, Pincus & Green, P.C., Philadelphia, PA, for Tray, Inc.

John R. Timmer, Samuel W. Silver, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Devon International Group, Inc., DMD Medical Group, Inc., Devon MD, LLC.

**<u>MEMORANDUM</u>**

KEARNEY, District Judge

 **\*1**  A company buying over seven million dollars of personal protective equipment for its health care customers at the outset of the COVID-19 pandemic last April may sue responsible parties when their purchased products do not arrive consistent with its expectation. The purchasing company faces a more difficult task in suing the sellers' officer or trying to turn a breach of contract claim into a fraud or conversion claim. We recognize a purchaser waiting for a refund of over seven million dollars for undelivered products may wish to hold as many people responsible for its lost purchase money as possible. But the purchaser must plead facts allowing it to proceed against the sellers' officers or on theories beyond breach of contract. We today grant an individual owner of he sellers' motion to dismiss claims against him as well as a partial motion to dismiss tort claims. We also strike scandalous and impertinent introductory paragraphs in the amended Complaint. The disappointed purchaser may take discovery and possibly amend should it discover facts allowing it to hold the sellers' officer liable for an alleged breach of contract.

**I. Alleged facts**

Dr. John A. Bennett and his wife Nance DiRocco formed a group of entities: Devon International Group, Inc., DMD Medical Group, Inc., and Devon MD, LLC.[1] Devon International markets itself as a multinational group of nine healthcare, information technology, manufacturing, and industrial businesses, which employs over 500 people in twenty countries.[2] Devon International owns DMD Medical and Devon MD as subsidiaries.[3] The Devon Entities "appear to be affiliated business enterprises with common ownership, common management, common business purpose, and common assets."[4] All Devon Entities operate from the same office in King of Prussia, PA.[5]

*Tray orders personal protective
equipment from the Devon Entities.*

Within weeks of the COVID-19 pandemic causing widespread shutdown of the United States, Dr. Bennett used his Devon International email address to promote Devon International's ability to manufacture and deliver personal protective equipment ("PPE") to representatives of Tray, International, Inc. Tray offers no detail regarding its business aside from alleging it is a Maryland corporation servicing clients including the University of Maryland Baltimore Washington Medical Center, Main Line Health, Ann Arundel Medical Center, and Doctors Community Hospital, the Maryland Department of Health, and Facebook.[6]

Dr. Bennett solicited orders for PPE.[7] Dr. Bennett said a supplier in China could immediately fulfill Tray's current PPE needs and a manufacturer in China could produce 100,000 units per day to fulfill Tray's future PPE needs.[8] Tray does not allege Dr. Bennett made specific representations about when Devon International would deliver the PPE.

 **\*2**  Tray submitted eight purchase orders to Devon International in April 2020 agreeing to pay more than $7.3 million to obtain over 1.9 million units. Tray's purchase orders specified the price, quantity, type of PPE, and ship date:

| Date of PO | Quantity | Ship Date | Price (Shipping Included) |
| --- | --- | --- | --- |

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

| April 6, 2020 | 100,000 gowns | April 18, 2020 | $530,000.00 |
|---|---|---|---|
| April 6, 2020 | 50,000 gowns | April 6, 2020 | $265,000.00 |
| April 6, 2020 | 50,000 gowns | April 6, 2020 | $265,000.00 |
| April 9, 2020 | 500,000 gowns | April 20, 2020 | $2,950,000.00 |
| April 9, 2020 | 200,000 gowns | April 9, 2020 | $1,180,000.00 |
| April 9, 2020 | 200,000 gowns | April 9, 2020 | $1,380,000.00 |
| April 15, 2020 | 350,000 masks | April 15, 2020 | $280,000.00 |
| | 30,000 gowns | May 1, 2020 | $210,000.00 |
| April 21, 2020 | 500,000 masks | April 21, 2020 | $175,000.00 |

Tray's purchase order did not specify an expected delivery date or whether the units would ship by air or by boat from China. Devon MD invoiced Tray. At Dr. Bennett's instructions, Tray wired the purchase funds to a DMD Medical bank account.[9] Dr. Bennett confirmed on April 11, 2020 the first 200,000 gowns would ship on April 15 and 16, 2020.[10] He confirmed on April 13, 2020 he had already shipped another 200,000 units.[11] Dr. Bennett further confirmed he filled three additional orders on April 15, 2020 and would partially fill another order on April 19, 2020.[12] But aside from his own say-so, Dr. Bennett did not provide tracking information or other evidence he filled the orders despite Tray's requests to do so.[13]

When Tray had not received any of its orders by April 24, 2020, its customers began to complain.[14] Tray reached out to Dr. Bennett asking for updates on the status of the orders.[15] Dr. Bennett responded by telling Tray 420,000 units would ship between April 24 and April 28, 2020.[16] Dr. Bennett would not provide tracking information or other evidence of shipment.[17]

Four days passed, and Tray, still without its ordered PPE, reached out to Dr. Bennett again seeking confirmation the orders had shipped.[18] Tray then terminated the purchase orders on April 28, 2020—around three weeks after it placed its first order—and sought a refund for the $7,356,500.00 it had paid.[19] Dr. Bennett refused to return the money.[20] To date, Tray has received neither the PPE it ordered eleven months ago nor a refund.[21] There is no allegation regarding what happened with the PPE allegedly ordered from China.

**II. Analysis**
Tray now sues Ms. DiRocco, Dr. Bennett, and the Devon Entities for breach of contract, fraud, negligent misrepresentation, conversion, and unjust enrichment. Dr. Bennett and the Devon Entities move to partially dismiss, arguing: (1) Dr. Bennett cannot be held personally liable for the actions he took on behalf of the Devon Entities; (2) the gist of the action doctrine bars Tray's tort claims; (3) Tray

fails to plead fraud with particularity under [Federal Rule of Civil Procedure 9(b)](); and, (4) Tray cannot prevail on an unjust enrichment claim because of the contract between the parties. [22] Dr. Bennett and the Devon Entities further move to strike the allegations in paragraphs 1 and 2 of the amended Complaint as impertinent and scandalous. [23] They do not move to dismiss the breach of contract claims against each of the Devon Entities.

**\*3** Tray argues we may hold Dr. Bennett personally liable because the Devon Entities act as his alter ego, he participated in the alleged misconduct, and he is a party to the contracts with Tray. Tray argues Maryland law does not recognize the gist of the action doctrine, and its tort claims would survive even if the gist of the action doctrine applied. Tray further argues it pleads its fraud claims with particularity and dismissal of its unjust enrichment claims is premature at this stage. Tray also argues we should not strike the first two paragraphs of its amended Complaint.

We first assess whether Tray alleged sufficient facts to impose personal liability on Dr. Bennett. As we find Tray failed to plead sufficient facts to pierce the corporate veil to impose personal liability on Dr. Bennett or prevail on a participation theory, we dismiss Tray's claims against Dr. Bennett without prejudice. We then assess whether the gist of the action bars Tray's tort claims. We must decide whether Pennsylvania and Maryland law conflict regarding the gist of the action doctrine and whether Tray's allegations sound in contract or tort. We find no conflict between Maryland and Pennsylvania law. We find the gist of the action doctrine bars Tray's tort claims. As we find Tray's fraud claim barred, we do not assess whether Tray pleads fraud with particularity under [Rule 9(b)](). We find dismissal of Tray's unjust enrichment claim is premature without knowing whether the Devon Entities will dispute the existence, enforceability, or validity of the contract between the parties. We strike paragraphs one and two of the amended Complaint as scandalous and impertinent.

### A. We dismiss the claims against Dr. Bennett without prejudice.

Tray seeks to impose personal liability on Dr. Bennett arguing he is the alter ego of the Devon Entities; participated in the alleged misconduct; and, is a party to the contract. Dr. Bennett argues Tray pleads insufficient facts to prevail on an alter ego theory, the participation theory does not apply because he acted on behalf of an entity, and he is not a party to

the contract. We find Tray fails to suffiently plead facts to maintain a claim against Dr. Bennett under Pennsylvania law.

### 1. We apply Pennsylvania law to determine whether we may hold Dr. Bennett personally liable to Tray.

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. [24] Under Pennsylvania law, the question of whether we may impose liability on corporate officers is governed by the law of the state of the entity's incorporation or the state of organization for a limited liability company. [25] We apply Pennsylvania law as all of the Devon Entities are organized or incorporated under Pennsylvania law. [26]

### 2. Tray fails to plead the Devon Entities are Dr. Bennett's alter ego.

Tray has not pleaded facts warranting our piercing the corporate veil. "As a general rule, members of a limited liability company or shareholders of corporations are 'not personally liable to perform corporate obligations.' " [27] But we may disregard the corporate form "whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." [28] "Pennsylvania courts presume the legitimacy of the corporate form and will not pierce the corporate veil unless exceptional circumstances warrant such an exceptional remedy." [29] To determine whether we should pierce the corporate veil, we consider several factors, including: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." [30] "These factors are not exhaustive, nor is every element required for a finding of liability; however, the situation must present 'an element of injustice or fundamental unfairness.' " [31] "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments cannot support a veil-piercing claim." [32]

**\*4** In *Partners Coffee Co., LLC v. Oceana Services and Products Co.*, Judge Standish analyzed whether a plaintiff pleaded sufficient facts to warrant piercing the corporate

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

veil under Pennsylvania law.[33] After an acquisition, the buyer and seller countersued each other for fraud and breach of contract.[34] The seller brought suit against the buyer-corporation, a related entity, and the president of both the buyer-corporation and the related entity.[35] The president and the related entity moved to dismiss the claims against them, arguing only the buyer-corporation could be held liable. The seller, seeking to pierce the corporate veil, alleged, "[the buyer-corporation] failed to observe corporate formalities or keep proper company records; [the buyer-corporation] had no officers or other members other than the [related entity's] officers and directors; and [the related entity and president] diverted assets of [the buyer corporation] for their own personal use."[36] The seller further alleged, "[the buyer-corporation] was insufficiently capitalized; there was an intermingling of funds between [the related entities'], [the buyer corporation] and [the president] personally; [the buyer-corporation's] officers, managers and directors, if any, did not function; [the buyer-corporation] did not pay distributions in the ordinary course of business; and [the president and/or the related entity] held themselves out as conducting business affairs without the use of company names and without identifying that their actions were taken as an officer or manager of [the buyer-corporation]."[37]

Judge Standish dismissed the claims against the related entity and the president without prejudice. He reasoned the allegations against the president and the related entity were nothing "more than a recitation of the elements necessary to hold [them] liable under the piercing of the veil theory or the alter ego theory."[38] But Judge Standish permitted the seller "to amend their [claims] to cure the shortcomings of their initial pleading."[39]

In *Clientron Corp. v. Devon IT, Inc.*, Judge Baylson dismissed claims against Dr. Bennett, finding the plaintiff failed to plead sufficient facts to pierce the corporate veil and hold Dr. Bennett liable under an alter-ego theory for Devon IT's actions.[40] But Judge Baylson nevertheless granted discovery on the issue of alter-ego liability and granted leave to file an amended complaint against Dr. Bennett if discovery yielded evidence supporting alter ego liability.[41]

Tray alleges: (1) "the Devon Entities are sham companies that were used to perpetrate a fraud on [Tray] and evade creditors by using insolvent and judgment-proof companies"; (2) "[Devon International] is a non-operating entity with no

employees or subsidiaries and no assets"; (3) "The Devon Entities ... intentionally intermingle their businesses together, and serve as alter egos for ... for Bennett and DiRocco"; (4) "The Devon Entities appear to be insolvent based upon ... their failure to return any portion of the funds that [Tray] paid for PPE that was never received, including substantial shipping charges"; and (5) "[u]pon information and belief, the Devon Entities failed to observe corporate formalities, failed to maintain capital reserves for paying creditors and generally operated so that they were nothing more than sham companies disguising the use of their assets."[42]

While Tray may allege sufficient facts to impose liability on the various Devon Entities rather than just Devon International,[43] its allegations regarding Dr. Bennett are insufficient to pierce the corporate veil. The allegations "the Devon Entities ... serve as alter egos ... for Bennett" is a legal conclusion, and we must disregard it. Like the allegations in *Partners*, Tray's allegation "the Devon Entities ... failed to observe corporate formalities, failed to maintain capital reserves and generally operated so that they were nothing more than sham companies" merely recite the elements of the veil piercing test and do not suffice under *Twombly*.

**\*5** The only allegation we could construe as a fact, rather than a bare recitation of the elements, in support of veil-piercing provides: "[t]he Devon Entities appear to be insolvent based upon ... their failure to return any portion of the funds [Tray] paid for his PPE."[44] This allegation does not persuade us to pierce the corporate veil. We do not find the failure to refund a cancelled order sufficient to allege insolvency or undercapitalization. If we accepted Tray's argument, we would in essence be finding failure to perform under a contract constitutes *prima facie* evidence of insolvency or undercapitalization. And even if the allegation of nonperformance is sufficient to allege insolvency, our Court of Appeals instructs "insolvency, without more, is not a factor which can justify piercing a corporate veil."[45] Given the presumption of legitimacy limited liability companies and corporations enjoy under Pennsylvania law, we find Tray fails to allege sufficient facts to pierce the corporate veil and impose liability on Dr. Bennett.

But as Judge Baylson did in *Clientron*, we will allow Tray to seek discovery into the appropriateness of piercing the corporate veil, and we will grant leave to Tray to amend the complaint to resurrect its claims against Dr. Bennett if

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 41 of 49

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

the evidence establishes a ground for imposing individual liability on him.

### 3. Tray fails to plead liability against Dr. Bennett under a participation theory because there is no viable tort claim against him and he did not contract with Tray in his individual capacity.

Tray seeks to hold Dr. Bennett liable for on his alleged participation in the alleged misconduct. As we discuss in more detail below, [46] Tray's tort claims are barred by the gist of the action doctrine and thus only Tray's breach of contract claim survives. The participation theory does not apply given the limited scope of the participation theory in breach of contract cases.

"Pennsylvania law recognizes the participation theory as a basis of liability." [47] The Supreme Court of Pennsylvania described the participation theory as "[t]he general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated or cooperated therein." [48] But the participation theory has limited applicability to breach of contract cases. [49] "Unless the corporate officer extends promises in his individual capacity, the participation theory does not apply in the context of an action for breach of contact." [50] "Whenever a corporation makes a contract, it is the contract of the legal entity—of the artificial being created by the charter—and not the contract of the individual members." [51]

Tray admits contracting with the Devon Entities and with not Dr. Bennett individually. Tray alleges Dr. Bennett used a Devon International email address to solicit orders. Dr. Bennett "promoted [Devon International's] capabilities, and those of the Devon entities." [52] He specifically represented Devon International "had an office located in China, which would help acquire the business relationships necessary to secure prompt shipping and competitive pricing for the PPE"; "through its corporate portfolio of subsidiaries (which includes the other Devon Entities), owned a production

company located in China"; "could immediately fulfill [Tray's] requirements"; and, "would be able to fulfill any additional orders." [53] In other words, all of the alleged representations involved the capabilities of a Devon Entity, not Dr. Bennett himself. Tray submitted the purchase orders to Devon International, and in turn Devon MD invoiced Tray. [54] Tray wired the over $7 million in purchase funds to DMD Medical. [55] Tray does not allege it placed an order with Dr. Bennett directly or sent money directly to his personal account. Tray does not allege a contract with Dr. Bennett in his individual capacity. The participation theory does not apply. Tray's argument Dr. Bennett is a party to this contract fails for the same reasons.

### B. We dismiss Tray's negligent representation, fraud, and conversion claims under the gist of the action doctrine.

*6 The Devon Entities argue we should apply Pennsylvania law and dismiss Tray's tort claims under the gist of the action doctrine. Tray argues we should apply Maryland law, which Tray contends does not recognize the gist of the action doctrine. Tray alternatively argues the gist of the action doctrine does not bar its tort claims. We find no true conflict between Maryland and Pennsylvania law. We apply Pennsylvania law and Maryland law interchangeably and the gist of the action doctrine bars Tray's tort claims.

### 1. There is no conflict between Pennsylvania and Maryland law on the gist of the action doctrine.

We find no conflict between Pennsylvania and Maryland law regarding the gist of the action doctrine. Under Pennsylvania's choice of law rules, we must "first determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply *i.e.*, whether there is a conflict." [56] "If the laws of the jurisdictions are the same, 'then there is no conflict at all, and a choice of law analysis is unnecessary.' " [57] "In the absence of a conflict, 'the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.' " [58] If the laws differ, we "must examine the interests and policies underlying the law of each jurisdiction and determine whether the conflict is 'true,' 'false,' or 'unprovided for.' " [59] "A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's

Case 1:26-cv-01238-JKM    Document 14-1    Filed 08/10/26    Page 42 of 49

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 1734845

laws."[60] If we find a false conflict, we "must apply the law of the only interested jurisdiction."[61] An "unprovided for" conflict exists if neither jurisdiction's interests would be impaired if its laws were not applied.[62] If we find an "unprovided for" conflict," we apply "the law of the place of the wrong."[63] A true conflict exists if both jurisdictions' interests would be impaired by the application of the other's laws.[64] If we find a "true" conflict, we "must determine which state has the greater interest in the application of its law."[65] To determine which state has a greater interest, "we must weigh each state's contacts on a qualitative scare according to their relation to the policies and interests underlying the particular issue."[66]

We first assess whether Pennsylvania and Maryland law conflict regarding whether a plaintiff can recover in tort for a breach of contractual obligations. Under Pennsylvania's "gist of the action doctrine," "an alleged tort claim against a party to a contract based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations."[67] "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do—then the claim is to be viewed as one for breach of contract."[68] But if "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[69]

**\*7** While Maryland courts do not employ the phrase "gist of the action," they have long recognized a similar doctrine. In *Mesmer v. Maryland Auto Insurance Fund*, the Court of Appeals of Maryland explained, "a contractual obligation, by itself, does not create a tort duty."[70] "Instead, the duty giving rise to a tort claim must have some independent basis."[71] "Mere failure to perform a contractual duty, without more, is not an actionable tort."[72] The Maryland Court of Appeals clarified, "[t]here is no single principle or simple test for determining when a defendant's breach of contract will also breach an independent duty and give rise to a tort action," but "when the dispute is over the existence of any

valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy."[73]

It is a general principle under Pennsylvania and Maryland law a plaintiff may not recover in tort for a defendant's breach of a contractual obligation. The tests for determining whether a claim truly sounds tort or contract require us to determine whether the duty the defendant breached arose from a contract or arose independently of the contract. As both jurisdictions recognize a plaintiff cannot recover for a defendant's breach of a contractual duty, we find no conflict between the law of Maryland and Pennsylvania, and we may refer to the laws of Pennsylvania and Maryland interchangeably. For ease of reference, we will refer to the principal recognized by both Pennsylvania and Maryland as the "gist of the action doctrine," though Maryland courts do not explicitly use this phrase.

### 2. The gist of the action doctrine bars Tray's fraud, negligent misrepresentation, and conversion claims.

The Devon Entities move to dismiss Tray's fraud, negligent misrepresentation, and conversion claims as barred by the gist of the action doctrine given the pending breach of contract claims. We find the gist of Tray's action lies in contract and dismiss Tray's claims for fraud, negligent misrepresentation, and conversion.

The gist of the action doctrine bars tort claims "when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations."[74] When determining whether to apply the gist of the action doctrine, our Court of Appeals directs we must "examine the factual allegations and ask, '[w]hat's this case really about?'"[75]

We are guided by our Court of Appeals affirming Judge McLaughlin's dismissal of a fraud claim under the gist of the action doctrine in *Downs v. Andrews*.[76] In *Downs*, the plaintiffs sought to purchase 171 mortgage notes from the defendants at a discount.[77] The plaintiffs gave the defendants $740,000 in advance of the sale.[78] Defendants timely delivered the first fifty-nine notes, but the rest did not arrive on time.[79] In total, the defendants only delivered $399,000

2021 WL 1734845

notes.[80] The plaintiffs filed a fraud claim against the defendants, and Judge McLaughlin dismissed the complaint under the gist of the action doctrine, finding the "heart" of plaintiffs' claim was the defendants' failure to deliver the mortgage notes owed under the contract.[81]

**\*8** Our Court of Appeals affirmed. It explained "[t]his case is about Defendants' alleged failure to fulfill their contractual promises to deliver all of the purchased notes."[82] While the plaintiffs alleged the defendants failed to deliver the notes because the defendants never actually owned the notes despite their representations, our Court of Appeals found "the obligation to perform was the result of the contract."[83] The Court thus held, "regardless of Plaintiffs' assertions about why the notes were not delivered, the crux of their action is that Defendants failed to deliver the notes as required under the contract."[84]

Our Court of Appeals further explained, "[p]laintiffs cannot rescue their claim by attempting to cast their complaint as alleging breach of a different duty, such as fraud in the inducement[.]"[85] The court acknowledged, "Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims."[86] But the court found it "need[ed] not decide whether fraud in the inducement claims are categorically barred under the gist of the action doctrine because the pleadings demonstrate that the primary basis for alleging that fraudulent activity induced the contract is the fact that the notes were not delivered in accordance with the contract, not a failure to fulfill a separate societal duty which may exist in other cases."[87] Our Court of Appeals concluded, "[b]ecause the 'nature of the duty' alleged to be violated arises out of Defendants' contractual promises to deliver the notes, and not a prior societal duty, we will affirm the District Court's dismissal of the complaint pursuant to the gist of the action doctrine."[88]

By contrast, in *Earl v. NVR, Inc.*, our Court of Appeals reversed a dismissal of an Unfair Trade Practices and Consumer Protection claim under the gist of the action doctrine.[89] In *Earl*, the plaintiff contracted with defendant to purchase a home, then under construction.[90] The defendant represented the home, when finished, "would contain 'quality architecture, timeless design, and beautiful finishes."[91] The defendant further represented: the home

"would be constructed in a good and workmanlike manner"; the defendant "would remedy any deficiency [the plaintiff] encountered"; and the home "would be constructed in accordance with relevant building codes and standards."[92] When the defendant finished construction, the plaintiff moved in and soon encountered a number of material defects.[93] The plaintiff asked the defendant to repair the defects, but quickly realized the defendant could not make the necessary repairs.[94]

The plaintiff sued under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and the defendant moved to dismiss under the gist of the action doctrine.[95] Our Court of Appeals found the gist of the action doctrine inapplicable. The court explained plaintiff's "complaint is not primarily premised upon the terms of the contract, ... but on the marketing and representations that induced her to enter into the contract in the first instance, as well as statements made to her by agents of [the defendant's] during the homebuilding process."[96] The court pointed to the "false representations ... about the Home prior to the formation of the contract" and the "false representations after the contract period, once she moved into the house" in support of its conclusion the alleged fraudulent actions "[were] collateral to the terms of the contract itself."[97]

**\*9** Tray's allegations are more like those presented in *Downs* than those in *Earl*. Like in *Downs*, where the only alleged fact supporting plaintiff's fraud claim was the defendants' failure to deliver the mortgage notes owed, the sole fact Tray identifies to support a theory of fraud is the Devon Entities' failure to deliver the contracted-for PPE. While Tray alleges Dr. Bennett represented the Devon Entities' ability to fill Tray's PPE orders, his representations are similar to the alleged representations in *Downs*, where the defendant represented he had the notes and would deliver them.

Had Tray not cancelled the orders and still never received the PPE or received substandard quality PPE, this case would come closer to *Earl*. In *Earl*, when the plaintiff moved into the home, it was clear the home did not live up to the promises the defendant made to induce her into purchasing it. Dr. Bennett promised he had a factory in China capable of manufacturing and shipping PPE. Tray does not allege facts showing these factories did not exist and did not ship in accordance with Dr. Bennett's representations. Tray alleges only it did not receive the PPE within two weeks of the ship date—which were shipping from China to the United States in the early

paralyzing grip of a pandemic—and thus it decided to cancel all PPE orders. Given Tray's cancellation of the orders, the fact it did not receive the orders is hardly surprising, let alone indicative Dr. Bennett and the Devon Entities never intended to fill Tray's orders and never shipped the ordered units.

Cognizant of our Court of Appeals' instruction to ask "what's this case really about?", we find this case is really about the Devon Entities' failure to deliver PPE in a timely manner as contemplated by the parties' agreement. The gist of this action lies in contract, not in tort. We dismiss Tray's fraud, negligent misrepresentation, and conversion claims.

### C. We deny the Devon Entities' motion to dismiss the unjust enrichment claims.

Dr. Bennett and the Devon Entities move to dismiss the unjust enrichment claim, arguing "unjust enrichment claims are barred when the parties' relationship is governed by a contract, as plaintiff alleges is the case here." [98] Tray argues it is premature to dismiss the unjust enrichment claim until it is clear whether the Devon Entities will dispute the validity or enforceability of the contract. [99] The Devon Entities did not respond to this argument. We agree with Tray it is be premature to dismiss the unjust enrichment claim until we know whether the Devon Entities plan to dispute the existence, validity, or enforceability of a contract between the parties. [100]

Judge DuBois's reasoning in *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, guides us. In *Slemmer*, the defendant moved to dismiss the plaintiffs' unjust enrichment claims, arguing the impropriety of a claim for unjust enrichment in light of the written contract between the parties. [101] While Judge DuBois acknowledged, "[t]he doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract," he nevertheless denied the motion. [102] He explained, "plaintiffs have not admitted that a valid contract existed between the parties." [103] "Given that plaintiffs are permitted to plead in the alternative, 'it is premature at this juncture to dismiss the unjust enrichment claim.' " [104]

**\*10** The Devon Entities have not answered, and they did not provide assurances in their reply brief they do not intend to challenge the existence, enforceability, or validity of a contract between the parties. We find it premature at this stage to dismiss the unjust enrichment claim.

### D. We strike paragraphs one and two of the amended Complaint.

The Devon Entities move to strike paragraphs one and two of the amended Complaint, arguing they are "immaterial, impertinent, and scandalous." Tray alleges in paragraph one: "In the early stages of the COVID-19 pandemic, while brave healthcare workers were risking their lives as the novel coronavirus was overwhelming hospitals across the country, there were scammers and con artists who saw an opportunity with respect to the scarce PPE." [105] Tray alleges in paragraph two: "According to a press release issued by the FBI on April 13, 2020, the environment at the time was 'ripe for fraudulent actors perpetrating advance fee [and other] schemes,' since the demand for PPE far outweighed the supply." [106]

A party may move to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." [107] This rule is "designed to reinforce the requirement in Rule 8 ... that pleadings be simple, concise, and direct." [108] The purpose of a motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." [109] "Motions to strike should not be used to persuade a court to determine disputed questions of law." [110] "They also 'may not serve as an avenue to procure the dismissal of all or part of a complaint.' " [111] The burden rests with the moving party to show that the challenged matter should be stricken. [112] The movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). [113] "Immaterial" matter "has no essential or important relationship to [any] claim[s] for relief." [114] "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." [115] And "scandalous" matter "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." [116]

Having determined Tray's allegations are really about the Devon Entities' breach of contract, we agree with the Devon Entities the references to "scammers and con artists" and "fraudulent actors" cast the Devon Entities in a derogatory light, and the reference to the FBI press release is impertinent and unnecessary to the issues in question. We strike paragraphs one and two from the amended Complaint. But we do not find the fact of the COVID-19 pandemic to be "immaterial" or "impertinent" to this case because we find it provides important context for the parties' expectations

regarding timely delivery of the PPE. The parties should not to construe our striking paragraphs one and two as prohibiting future mention of the COVID-19 pandemic in their filings or at trial.

### III. Conclusion

 *11  We dismiss all claims against Dr. Bennett. We further dismiss Tray's claims against the Devon Entities for fraud, negligent misrepresentation, and conversion. We do not dismiss the unjust enrichment claims. We further strike paragraphs one and two of the amended Complaint. We do not address Ms. DiRocco's motion to dismiss for lack of personal jurisdiction and insufficient service of process at this stage. [117]

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1734845

---

### Footnotes

1      ECF Doc. No. 1 at 1. We refer to all three collectively as the Devon Entities.

2      *Id.* ¶ 16.

3      *Id.* ¶ 21.

4      *Id.* ¶ 24.

5      *Id.* ¶¶ 9-11.

6      *Id.* ¶ 6.

7      *Id.* ¶ 18.

8      *Id.* ¶ 32.

9      *Id.* ¶ 40.

10     *Id.* ¶ 41.

11     *Id.* ¶ 42.

12     *Id.* ¶ 43.

13     *Id.* ¶ 44.

14     *Id.* ¶ 45.

15     *Id.*

16     *Id.* ¶ 46.

17     *Id.*

18     *Id.*

19     *Id.*

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

*Id.*

*Id.* ¶¶ 51-53.

*See* ECF Doc. No. 19 at 2-8.

*Id.* at 9.

*Foulke v. Dugan*, 187 F. Supp. 2d 253, 257 (E.D. Pa. 2002) (citing *Klaxon Co. v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

*See Pasternack v. Klein*, No. 14-2275, 2017 WL 10810183, at *7 (E.D. Pa. July 24, 2017); *McElroy v. FirstEnergy Corp*, 824 Fed. App'x 97, 99 (3d. Cir. 2020).

ECF Doc. No. 4 ¶¶ 9-11.

*Lieberman v. Corporacion Experienca Unica S.A.*, 226 F. Supp, 3d 451 (E.D. Pa. 2016) (quoting *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520-21 (3d Cir. 1994)).

*Ashley v. Ashley,* 393 A.2d 637, 641 (Pa. 1978).

*Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 509 (E.D. Pa. 2014).

*Id.*

*Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.,* 643 F.Supp.2d 675, 695 (E.D. Pa. 2009) (quoting *Trustees, Nat'l Elevator Indus. Pension v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003)).

*Accurso*, 23 F. Supp. 3d at 510 (quoting *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012)).

700 F. Supp. 2d 720 (W.D. Pa. 2010).

*Id.* at 725, 736.

*Id.* at 736.

*Id.*

*Id.*

*Id.* at 738.

*Id.*

No. 13-5634, 2015 WL 70921, at *1 (E.D. Pa. Jan. 5, 2015).

*Id.* After discovery, the plaintiff amended the complaint to add more specific allegations supporting piercing the corporate veil to impose liability on Dr. Bennett and amended again to add claims against Ms. DiRocco. *Id.* at *3. Judge Baylson allowed the amendments and the claims against Dr. Bennett and Ms. DiRocco to then proceed in discovery. *Id.*

ECF Doc. No. 4 ¶¶ 15, 17, 22, 24, 26.

None of the Devon Entities have moved to dismiss the claims against them.

2021 WL 1734845

44    ECF Doc. No. 4 ¶ 25.

45    *Lutyk,* 332 F.3d at 195.

46    *See infra*, Part III.B.

47    *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).

48    *Id.* (citations omitted).

49    *See Walsh v. Alarm Sec. Grp. Inc.*, 95 Fed. App'x 399, 402 (3d Cir. 2004).

50    *Id.* (citations omitted).

51    *Id.* (quoting *Bala Corp. v. McGlinn*, 144 A. 823, 824 (Pa. 1929)).

52    ECF Doc. No. 4 ¶ 18.

53    *Id.* ¶ 32.

54    *Id.* ¶ 35, 38.

55    *Id.* ¶ 40.

56    *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013).

57    *Id.* (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)).

58    *Id.* (quoting *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)).

59    *Id.* (citing *Hammersmith*, 480 F.3d at 230).

60    *Id.*

61    *Id.*

62    *Id.*

63    *Id.*

64    *Id.*

65    *Id.*

66    *Id.*

67    *Dixon v. Northwestern Mutual Ins.*, 146 A.3d 780 (Pa. Super. Ct. 2016).

68    *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014).

69    *Id.*

70    725 A.2d 1053, 1058 (Md. 1999).

71    *Id.*

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

72      *Id.* (quoting *Wilmington Trust Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981)).

73      *Id.* at 1059.

74      *Bruno,* 106 A.3d at 53; *see also Smith v. Univ. of Pa.*, No. 20-2086, 2021 WL 1539493, at *9 (E.D. Pa. Apr. 20, 2021).

75      *Downs v. Andrews*, 639 Fed App'x 816, 819 (3d Cir. 2016) (quoting *Pediatrix Screening, Inc. v. Telechem Int'l Inc.*, 602 F.3d 541, 550 (3d Cir. 2010), *overruled on other grounds by Ortiz v. Jordan*, 562 U.S. 180 (2011)).

76      639 Fed. App'x 816 (3d Cir. 2016).

77      *Id.* at 817.

78      *Id.* at 818.

79      *Id.*

80      *Id.*

81      *Id.* at 820.

82      *Id.* at 819-20.

83      *Id.* at 820.

84      *Id.*

85      *Id.*

86      *Id.*

87      *Id.*

88      *Id.*

89      990 F.3d 310 (3d Cir. 2021).

90      *Id.* at 311-12.

91      *Id.* at 311.

92      *Id.*

93      *Id.*

94      *Id.*

95      *Id.*

96      *Id.* at 315.

97      *Id.*

98      ECF Doc. No. 9-1 at 14.

Tray, Inc. v. Devon International Group, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 1734845

99    ECF Doc. No. 16 at 15, 18.

100   Neither party finds a conflict between Maryland and Pennsylvania law regarding the applicability of unjust enrichment in this case or regarding the elements of unjust enrichment, nor do we.

101   955 F. Supp. 2d 452, 460 (E.D. Pa. 2013).

102   *Id.* (quoting *Wilson Area Sch. Dist. v. Skepton,* 895 A.2d 1250 (Pa. 2006)).

103   *Id.*

104   *Id.* (quoting *Brown & Brown, Inc. v. Cola,* 745 F.Supp.2d 588, 626 (E.D. Pa. 2010)).

105   ECF Doc. No. 4 ¶ 1.

106   *Id.* ¶ 2.

107   Fed. R. Civ. P. 12(f).

108   *Castelli-Velez*, 2021 WL 978814, at *2 (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2020 update)).

109   *Id.* (quoting *United States v. Educ. Mgmt. Corp.,* 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012)).

110   *Id.* (citation omitted).

111   *Id.* (citation omitted).

112   *Id.*

113   *Id.*

114   *Id.*

115   *Id.*

116   *Id.*

117   Ms. DiRocco separately moves to dismiss for insufficient service of process and lack of personal jurisdiction. We do not address her motion in this Memorandum but trust Tray's counsel will be mindful of this Memorandum before expending time and costs for all counsel in pursuing jurisdictional discovery to respond to Ms. DiRocco's motion.

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.