UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MYERSTOWN SOCCER CLUB, *a Pennsylvania nonprofit corporation*,<br><br>Plaintiff | : | Civil Action |
| v. | : | No. 1:26-cv-01238 |
| GOPLAY LLC, *a Massachusetts limited liability company, formerly known as* GOPLAY SPORTS TOURS LLC, DARREN PETER LYONS, *individually and as Manager for GOPLAY LLC*, and BRIAN AINSCOUGH*, individually and as Manager for GOPLAY LLC*<br>Defendants | : | JURY TRIAL DEMANDED<br><br>JUDGE JULIA K. MUNLEY |

**PLAINTIFF MYERSTOWN SOCCER CLUB'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRIAN AINSCOUGH'S MOTION TO DISMISS**


Justin J. Bollinger
Elizabeth I. Reed
2933 Lititz Pike
P.O. Box 5349
Lancaster PA 17606
(717) 291-1700 (p)
(717) 291-5547 (f)
jbollinger@gkh.com
ereed@gkh.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Table of Authorities ……………………………………………………………………………..i

Introduction ……………………………………………………………………………………1

Factual Background …………………………………………………………………………….1

Procedural History ……………………………………………………………………………...2

Argument ………………………………………………………………………………………..2

A. This Court has Proper Jurisdiction Over Defendant Pursuant to 28 U.S.C. 1332…….2

B. Plaintiff has Plead a Prima Facia Breach of Contract Case and Alternatively has Averred the Conditions for Proving Unjust Enrichment or Promissory Estoppel…….6

GoPlay Breached the Mandatory Terms of the Sports Tourism Contract that it was Obligated to Perform, and Failed to take Remedial Actions in the Event of Non-Performance………………………………………………………..7

Alternatively, Ainscough is Liable for Unjust Enrichment for Taking Payment Without Providing any Consideration in Return ……………………….8

Plaintiff's Promissory Estoppel Claim Should be Sustained Since it is Evident that Plaintiff Relied on Defendant's Promises to its Material Detriment ………………………………………………………………………..10

C. Myerstown's Claims for Fraud, Negligent and/or Intentional Misrepresentation, and Conversion Should Not be Barred by the Gist of the Action Doctrine or the Economic Loss Doctrine ……………………………………………………………11

D. Ainscough's Conduct is Sufficient to Pierce the Corporate Veil Under Massachusetts Law …………………………………………………………………13

E. Conclusion ………………………………………………………………………..16

Certificate of Word Count

Certificate of Service

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ……………………………………………………………………6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ……………………………………………………………………6

*Burger King Corp.*
471 U.S. at 475 (1985) ……………………………………………………………….4, 6

*Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*
648 Pa. 604 A.3d 1010 (2018) ………………………………………………………..8, 13

*Crouse v. Cyclops Indus.*
745 A.2d 606 (Pa. 2000) ……………………………………………………………...10

*Daimler AG v. Bauman*
571 U.S. 117 S. Ct. 746 L. Ed. 2d 624 (2014) ……………………………………………….3

*Evans v. Multicon Construction Corporation*
30 Mass. App. Ct 728 (1991) …………………………………………………………….14

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*
217 A.3d 1227 (Pa. 2019) ……………………………………………………………..9, 10

*Gen. Elec. Co. v. Deutz AG*
270 F.3d 144 (3d Cir. 2001) ……………………………………………………………5

*Gibbs v. Ernst*
538 Pa. 193 (Pa. 1994) ………………………………………………………………..12

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*
326 U.S. 310 S. Ct. 154 L. Ed. 95 (1945) ……………………………………………….3

*Kraft Power Corp. v. Merrill*
464 Mass. 145 (2013) …………………………………………………………………...14

*Maguire v. Wheeler*
300 Pa. 513 (Pa. 1930) ………………………………………………………………….12

*Marten v. Godwin*
499 F.3d 290 (3d Cir. 2007) …………………………………………………………..3

*McGovern*
554 F.3d at 115 ……………………………………………………………………………6

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*
635 Pa. 427 (Pa. 2016) ……………………………………………………………………7

*Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*
933 A.2d 664 (Pa. Super. Ct. 2007) ………………………………………………………8

*O'Connor v. Sandy Lane Hotel Co.*
496 F.3d 312, 325 (3d Cir. 2007) …………………………………………………….4, 5

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*
149 F.3d 197 (3d Cir. 1998) …………………………………………………………4

*Phillips v. Cnty. of Allegheny*
515 F.3d 224 (3d Cir. 2008) …………………………………………………………6

*Santiago v. Warminster Twp.*
629 F.3d 121 (3d Cir. 2010) …………………………………………………………6

*Schwartz v. Rockey*
593 Pa. 536 (Pa. 2007) ……………………………………………………………..9, 10

*SodexoMAGIC, LLC v. Drexel University*
24 F.4th 183 (3d Cir. 2022) ………………………………………………………...11, 12, 13

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980) ……………………...4, 8

**Statutes**

28 U.S.C. 1332 ……………………………………………………………………………2

42 Pa. C.S. §5322 …………………………………………………………………………2

Fed. R. Civ. P. 4(k)(1)(A) ……………………………………………………………….2

Mass. Gen. Laws Ann. ch. 156C, §22 ……………………………………………………7, 13

## I. INTRODUCTION

This case involves mismanagement and misappropriation of the finances of a travel services company providing travel services to youth sports teams. Defendant Brian Ainscough ("Ainscough") was part of the management of GoPlay LLC ("GoPlay") and, along with Darren Peter Lyons, was instrumental in overseeing the operations of GoPlay. For the reasons set forth in this Memorandum of Law, Plaintiff Myerstown Soccer Club respectfully requests that this Honorable Court deny Defendant Ainscough's Motion to Dismiss because personal jurisdiction has been established, Plaintiff's claims are legally sufficient, and plausible facts have been pled to demonstrate why Plaintiff should be permitted to pierce the corporate veil of GoPlay as a result of Ainscough's actions and inactions regarding GoPlay's business operations.

## II. FACTUAL BACKGROUND

This matter arises from a travel services agreement dated September 7, 2025 (the "Agreement"), between Plaintiff Myerstown Soccer Club ("Myerstown" or "Plaintiff") and Defendant GoPlay LLC. *See* Compl., Ex. B. The Agreement outlines GoPlay's promise to provide travel services, including air and ground transportation, lodging, cultural experiences, and certain meals, for Myerstown's trip to Germany and Austria during the summer of 2026 (the "Trip"). The cost of the Trip was $3,600 per person. Myerstown made payments to GoPlay totaling ONE HUNDRED FIFTEEN THOUSAND DOLLARS and 00/100 ($115,000.00). *See id*. at 1.

On April 6, 2026, Myerstown received an email from GoPlay stating that GoPlay was ceasing operations and would not fulfill its future booking obligations. *See* Compl., Ex C. On April 9, 2026, Myerstown's Executive Director received a phone call from Ainscough informing Myerstown that he did not know whether any flights or hotel accommodations had been secured for Myerstown despite Myerstown's payment. During this phone call, Ainscough offered to assist Myerstown in booking an alternate overseas trip. *See* Compl., ¶ 14.

On April 7, 2026, Myerstown's counsel requested documentation related to the travel plans, specifically flight confirmations, hotel booking confirmations, transportation confirmations, and any other documentation regarding prepayments or deposits. *See* Compl., Ex. C. After receiving no response, Myerstown's counsel sent a formal demand letter to GoPlay, dated April 21, 2026, demanding the return of Myerstown's $115,000 payment. *See* Compl., Ex E. Neither Myerstown nor its counsel received a response to these communications. Myerstown's Trip was cancelled and it has not received the return of any payments made to GoPlay.

## III. PROCEDURAL HISTORY

Myerstown filed its Complaint on May 8, 2026. Ainscough filed a Motion to Dismiss Complaint on July 27, 2026. Ainscough's Memorandum of Law in Support of Motion to Dismiss was subsequently filed on August 10, 2026. Ainscough's Motion to Dismiss is therefore ripe for review.

## IV. ARGUMENT

### A. THIS COURT HAS PROPER JURISDICTION OVER DEFENDANT PURSUANT TO 28 U.S.C. 1332.

A federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located…" Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction to the extent permitted by the United States Constitution. 42 Pa. C.S. § 5322. The Fourteenth Amendment's Due Process Clause states that no state shall "deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV. Regarding personal jurisdiction, due process "requires only that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).

There are two types of personal jurisdiction: specific and general. General jurisdiction is established when the dispute does not arise out of the contact with the state, but the defendant's contacts with the forum state are so "continuous and systematic" as to render them "at home" in that state and allow suit on matters unrelated to the contact.[1] *Daimler AG v. Bauman*, 571 U.S. 117, 119, 134 S. Ct. 746, 749, 187 L. Ed. 2d 624 (2014).

In *Marten v. Godwin*, the Third Circuit described the three-part test courts use in determining whether specific jurisdiction over a defendant exists. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). First, the court determines whether the defendant "purposefully directed his activities at the forum." *Id*. (internal citation omitted). Second, the court evaluates whether the plaintiff's claim "arise[s] out of or relate[s] to at least one of those specific activities." *Id*. (internal citation omitted). Finally, the court decides whether exercising "jurisdiction otherwise comports with fair play and substantial justice." *Id*. (internal citation omitted).

Specific personal jurisdiction exists here because Ainscough purposefully directed his conduct to Myerstown's Executive Director in Pennsylvania regarding Defendant's breach of the Agreement. *See* Compl., ¶ 14. Additionally, Ainscough had actual or constructive knowledge of false representations made by Defendants collectively to Myerstown, including that travel arrangements had been secured, in order to induce Myerstown to pay additional deposits. *See* Compl., ¶¶ 38-43. Therefore, the first two elements of the Third Circuit's test for determining whether personal jurisdiction exists have been met.

---

[1] Plaintiff does not dispute that this Court lacks general personal jurisdiction over Ainscough. However, Plaintiff contends that this Court has specific personal jurisdiction over Ainscough.

As to the third element, the burden is on Ainscough to show that the exercise of personal jurisdiction is unreasonable and does not comport with traditional notions of fair play and substantial justice. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980). This requires a defendant to present "a 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair," which Ainscough has failed to do. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 325 (3d Cir. 2007) (quoting *Burger King*, 471 U.S. at 477). It is only in "rare" and "compelling" cases where jurisdiction is unreasonable despite the presence of minimum contacts. *Id.* Here, far from being a rare or compelling case, all the fairness factors underscore that substantial justice is promoted by this Court exercising personal jurisdiction over Ainscough.

To make this determination, courts evaluate several factors, including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient relief, the interstate judicial system's interest in resolving controversies in the most efficient manner possible, and the States' shared interest in furthering fundamental social policies. *Id.* Here, Ainscough has not established any factor that would make personal jurisdiction unreasonable or unjust.

First, there would not be a heavy burden on Ainscough to travel from Massachusetts to Pennsylvania to litigate this case because both states are located in the northeast and are geographically proximate to one another. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 208 (3d Cir. 1998) (finding that traditional notions of fair play and substantial justice are not offended, and there is no burden on the defendant, by making the defendant litigate in a nearby state). Second, Pennsylvania has an interest in resolving the dispute because it involves financial harm to over fifty-four (54) of its residents who were part of the Trip. Third, Plaintiff has an interest in obtaining convenient relief in Pennsylvania because it is domiciled in Pennsylvania and

conducts its nonprofit operations in Myerstown, Pennsylvania. Fourth, an efficient resolution would be achievable in Pennsylvania, and both Massachusetts and Pennsylvania have an interest in furthering fundamental social policies. No information has been presented that would make the burden on Ainscough so heavy as to make personal jurisdiction in Pennsylvania unfair or unjust. This is not to say there is no burden on Ainscough to litigate this matter in Pennsylvania. However, requiring Myerstown to litigate this matter in Massachusetts would "saddle [Plaintiff] with a burden at least as equal to [Defendant]." *O'Connor*, 496 F.3d at 325.

Pennsylvania may not be the most convenient forum for Ainscough, "[b]ut when minimum contacts exist, due process demands no more than a reasonable forum." *Id.* Since minimum contacts exist and Defendants have not made a compelling showing that Pennsylvania is an unreasonable forum, this Court should deny Ainscough's Motion to Dismiss and exercise personal jurisdiction over Mr. Ainscough.

In *O'Connor*, the Third Circuit found that the defendant "continued to cultivate the relationship" and form an agreement with the Plaintiff by various types of communication and that those communications "establish[ed] purposeful contact with Pennsylvania." *Id*. at 318. Since the dispute arose out of those contacts and subsequent agreements, the Third Circuit found that minimum contacts existed for specific personal jurisdiction. *Id.* at 323-24. *See also Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150-53 (3d Cir. 2001) (holding that personal jurisdiction existed between a German company and a Pennsylvania citizen, regardless of which party initiated the relationship, when the defendant's contacts with the forum state were instrumental in the formation or breach of a contract and the parties "create[d] continuing relationships and obligations with citizens of another state"). Indeed, it would seem manifestly unjust for Ainscough to avail himself and GoPlay of the economic privileges of doing business in Pennsylvania, while dodging the jurisdictional reach of the forum courts when those activities inflict harm on in-state residents. *See*

*Burger King Corp.*, 471 U.S. at 475 (1985). In this case, Ainscough and Lyons communicated with representatives from Myerstown through various forms, including telephone, email, and video conference, in order to cultivate the relationship underlying the Agreement, and which induced Myerstown to continue making payments to GoPlay to secure the Trip.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Ainscough's Motion to Dismiss because Ainscough's past actions and omissions have subjected him to the jurisdiction of this Honorable Court.

**B. PLAINTIFF HAS PLED A PRIMA FACIE BREACH OF CONTRACT CASE AND ALTERNATIVELY HAS AVERRED THE CONDITIONS FOR PROVING UNJUST ENRICHMENT OR PROMISSORY ESTOPPEL.**

Plaintiff's contract and quasi-contract claims should be sustained since a plausible claim has been articulated. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See McGovern*, 554 F.3d at 115. A complaint survives a motion to dismiss if the Court determines that the plaintiff is entitled to relief "under any reasonable reading of the complaint." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotation marks omitted).

Multiple of the claims to which Ainscough objects arise out of the same nucleus of operative facts. Conclusions of law are not to be made at this stage and regardless of whether the Court decides that a valid contract exists, all three causes of action are plausible stemming from the breached promises alleged within the Complaint.

1. **GoPlay Breached the Mandatory Terms of the Sports Tourism Contract that it was Obligated to Perform, and Failed to Take Remedial Actions in the Event of Non-Performance.**

It is clear that Defendants violated the clear and unambiguous contractual language after Myerstown was denied a prompt refund after the Trip was canceled.

Pennsylvania courts have long held that a *prima facie* breach of contract case is comprised of three elements: (1) the existence of a contract containing essential terms; (2) a breach of contract occurred; and (3) damages flowing from the breach. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (Pa. 2016). While Ainscough contends that his status as a manager of the LLC is insufficient to impose liability for a breach of contract since he disputes being a party to the agreement, the facts suggest otherwise.

Indeed, both Ainscough and Defendant Lyons are listed as managers of the LLC on filings recorded with the Massachusetts Secretary of State's Corporations Division. Both are authorized to file documents with the Corporations Division, and both are expressly permitted to "execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property". *See* Compl., Ex. A. While Ainscough seeks protection under a Massachusetts statute that explains the limited personal liability of LLC members, he overlooks the significance of the operative statutory phrase he quoted, which states "[n]o member or manager of a limited liability company shall be personally liable… *solely* by reason of being a member or acting as a manager of the limited liability company." Mass. Gen. Laws Ann. ch. 156C, § 22 (emphasis added).

Ainscough's conduct went beyond the statute's protections through his dealings with Myerstown. Specifically, Ainscough knew that GoPlay and his partner, Defendant Lyons, had engaged numerous sports teams, including Myerstown, for future trips, and he knew that despite continuing to take deposits from groups like Myerstown, GoPlay would be unable to fulfill the promised trips. Unlike the attenuated stream of commerce theory articulated in *Volkswagon*, where

a Mid Atlantic car dealership sold a vehicle that ended up in Oklahoma, a state where the business had no ties, Ainscough possessed full knowledge that GoPlay was offering its services and soliciting customers in Pennsylvania without the ability to perform these agreements. Ainscough knew that these customers would be harmed by the mismanagement of GoPlay's business and other deceptive practices that induced Myerstown to pay additional deposits, all while GoPlay's representatives had full knowledge that the Trip would not materialize and GoPlay would be unable to return Myerstown's deposit. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Before the Agreement was signed, Ainscough could have exercised his managerial discretion to prevent the execution of the Agreement or to cease solicitation efforts entirely. Instead, Ainscough continued to avail himself of the benefits and protections of the Commonwealth's laws that accompanies doing business in Pennsylvania.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Ainscough's Motion to Dismiss.

**2. Alternatively, Ainscough is Liable for Unjust Enrichment for Taking Payment Without Providing any Consideration in Return.**

Defendants received substantial payments without providing anything of value in return, thus conferring an unearned benefit on Defendants GoPlay, Ainscough, and Lyons. A prima facie unjust enrichment case is formed when there are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 668-69 (Pa. Super. Ct. 2007) (internal quotation marks omitted).

In the event the Court determines that the Agreement is invalid or unenforceable, the fact that Myerstown paid valuable consideration to Defendants and in exchange received no benefit , constitutes a prime facie claim for unjust enrichment.

With respect to Ainscough's argument that unjust enrichment as an equitable theory of relief cannot be advanced simultaneously with a breach of contract claim, this does not pass muster at the pleading stage, and the Plaintiff is not yet required to elect a remedy. The purpose of the election of remedies doctrine is to prevent a judicially sanctioned injustice in the form of a plaintiff recovering a double windfall for the same injury. *Schwartz v. Rockey*, 593 Pa. 536, 548 (Pa. 2007). Under the election of remedies doctrine, a party cannot pursue inconsistent remedies and must ultimately choose which remedy shall be "binding" on them to the exclusion of other possible claims for relief. *Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.,* 217 A.3d 1227, 1238-39 (Pa. 2019). Here, an early election need not be made since no partial performance has been made by Defendants and Plaintiff has not enjoyed the benefit of the bargain to any extent. *Gamesa Energy*, at 655 Pa. 351, 373.

Since Defendants are in breach of their obligations to Myerstown, it is reasonable for the full $115,000 to be demanded under a theory of unjust enrichment so that Myerstown can be made whole. Moreover, because Ainscough and Defendant Lyons were the only managers of GoPlay, and controlled the finances of GoPlay, it is plausible to expect that discovery will reveal the specific ways in which Ainscough and Defendant Lyons were enriched by GoPlay's business operations at the expense of Myerstown. It is impossible for Myerstown, prior to discovery, to determine the nature and extent of the benefits conferred upon and appreciated by Defendants given the misrepresentations made to them by Defendants throughout the solicitation, negotiation, and alleged performance of the Agreement.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Ainscough's Motion to Dismiss.

### 3. Plaintiff's Promissory Estoppel Claim Should be Sustained Since it is Evident that Plaintiff Relied on Defendant's Promises to its Material Detriment.

Plaintiff's claim for promissory estoppel is pled in the alternative in the event the Court finds that the Agreement is enforceable. Under Pennsylvania law, "a party may generally simultaneously plead and attempt to prove alternative causes of action seeking damages through inconsistent remedies supported by the same factual scenario." *Gamesa Energy USA,* 217 A.3d at 1239. The *Gamesa* Court reasoned that a plaintiff may be prejudiced by inadvertently waiving claims without having the benefit of obtaining new material facts only available via discovery that would offer support for alternative claims. *Id*. Similarly, the Court held in *Schwartz* that a party may simultaneously plead inconsistent claims for relief when the action springs from a contract and may later amend the complaint with an inconsistent remedy substitution, provided the plaintiff lacked knowledge of material facts. *Schwartz v. Rockey*, 593 Pa. 536, 549-50 (Pa. 2007).

Here, Defendants offered to plan and book travel accommodations for the Trip, but failed to honor that promise after accepting $115,000 in payments. Pennsylvania courts have long defined the common law claim of promissory estoppel as quasi-contractual arrangements that create a common law duty on the part of the promisor. The Pennsylvania Supreme Court has stated that the doctrine of promissory estoppel entails a promise made from one party to another that induced the other party to rely on that representation and have ordered their affairs around it and have suffered a loss as a result of their detrimental reliance. *See Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). Specifically, the elements required to maintain an action for promissory estoppel are: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained

from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Id.*

In the present case, GoPlay, acting through its individual representatives including Ainscough, made promises to provide travel services to Myerstown. In response to such promise, Myerstown made payments to GoPlay totaling $115,000. While Myerstown's preference would have been to receive the travel services, at this point injustice can only be avoided by the return of Myerstown's payment. It is Myerstown's belief that discovery in this case will further reveal the nature and extent of the Defendants' collective fraud.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Ainscough's Motion to Dismiss because promissory estoppel is viable claim pled in the alternative at this juncture.

**C. MYERSTOWN'S CLAIMS FOR FRAUD, NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION, AND CONVERSION SHOULD NOT BE BARRED BY THE GIST OF THE ACTION DOCTRINE OR THE ECONOMIC LOSS DOCTRINE.**

Myerstown has pled that Defendants made representations and promises that GoPlay would provide certain travel services, which fraudulently induced Plaintiff to enter into the Agreement. *See* Compl., ¶¶ 39-42. *See also SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 217 (3d Cir. 2022) (finding that the gist of the action doctrine did not apply because the plaintiff's fraudulent inducement claim did not depend upon a breach of a contractual duty). The Third Circuit in *SodexoMAGIC, LLC v. Drexel* stated that "a precontractual duty not to deceive through misrepresentation or concealment exists independently of a later-created contract." *Id.* In *SodexoMAGIC, LLC*, the Court found that Drexel had misrepresented and concealed student enrollment projections while the parties were negotiating a Management Agreement for food services. *Id*. The Court recognized that because, at the time these representations were made, the

parties had not executed a contract, that the duty owed by Drexel to the plaintiff was "grounded only in tort." *Id.* Therefore, the Third Circuit concluded that a "tort-based fraud claim would exist with or without a later-in-time contract" and as a result, the gist of the action doctrine did not bar the plaintiff's fraud claim. *Id*.

Similar to the facts in *SodexoMAGIC, LLC*, tort-based relief is appropriate here because GoPlay, through its managers, Ainscough and Defendant Lyons, misrepresented its ability to provide travel arrangements in order to induce Myerstown into entering the Agreement and paying additional deposits. *See Maguire v. Wheeler*, 300 Pa. 513, 520 (Pa. 1930) ("Where the person making the promise under such circumstances intended at the time not to perform it, thus fraudulently making use of the promise as a device to procure the contract or deed, equity will grant relief.").

To establish a fraud claim in Pennsylvania, the following elements must be present: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 207 (Pa. 1994).

Here, Defendants, including Ainscough, made representations that GoPlay would be able to provide certain travel services which were material to Myerstown's decision to enter into the Agreement. *See* Compl. ¶ 39. Defendants knew such representations were false, or were reckless as to whether these representations were true or false, and they made them intending to mislead Myerstown into relying on these promises. *See* Compl. ¶ 40-41. Myerstown justifiably relied upon such misrepresentations. Therefore, the loss of the $115,000 Myerstown paid to GoPlay was proximately caused by its reliance on these misrepresentations. *See* Compl. ¶ 26.

For these same reasons, Myerstown's fraud claim should not be barred by the economic loss doctrine, because Myerstown, as did the plaintiff in *SodexoMAGIC, LLC*, has a tort-based fraud claim regardless of whether a later-in-time contract was created. *SodexoMAGIC, LLC*, 24 F.4th at 217. Furthermore, given the nearly identical elements necessary to plead a claim for intentional misrepresentation, Myerstown contends that these claims should similarly survive Ainscough's Motion to Dismiss. Myerstown's claim that Defendants were at minimum negligent as to the truth or falsity of their representations regarding GoPlay's ability to fulfill its contractual obligations, should similarly permit such claims to survive Ainscough's Motion to Dismiss.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Ainscough's Motion to Dismiss.

### D. AINSCOUGH'S CONDUCT IS SUFFICIENT TO PIERCE THE CORPORATE VEIL UNDER MASSACHUSETTS LAW.

According to Pennsylvania's choice of law principles, courts look to the law of the state of incorporation in determining whether piercing the corporate veil is justified. *See Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC,* 648 Pa. 604, 194 A.3d 1010 (2018). Looking to Massachusetts law, Ainscough's argument that he is protected under the LLC's shield fails. The applicable Massachusetts statute provides:

> *…the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.*
>
> Mass. Gen. Laws Ann. ch. 156C, § 22.

The law indicates that a member or manager cannot be held liable in a vacuum based exclusively on their title. However, this analysis changes once a member's or manager's acts and

omissions are evaluated. Once such actions or omissions are considered, the qualifier *solely* ceases offering blanket immunity to Ainscough.

The standard for determining whether the veil should be pierced is comprised of two prongs: (1) the principal exercises "pervasive control" over the company; and (2) "there is some fraudulent or injurious consequence" that follows. *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 152 (2013) (internal quotations and citations omitted). In *Evans v. Multicon Construction Corporation*, the Appeals Court of Massachusetts explained the standard by highlighting the twelve (12) factors that are relevant for a corporate veil piercing analysis:

> *(1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.*
>
> 30 Mass. App. Ct. 728, 733 (1991).

Here, a majority of these factors suggest it is appropriate to pierce the corporate veil with respect to Ainscough. Ainscough is registered with the Massachusetts Department of State as a manager. *See* Compl., Ex. A. He is further listed on the same documents as possessing authority to execute documents filed with the Massachusetts Secretary of State's Office. *See id*. Ainscough is again listed as a person authorized to "execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property" *See id*. Given his breadth of authority, and being one of only two managers, Ainscough exercised pervasive control over GoPlay. It is also believed that Ainscough comingled personal finances with the GoPlay business account and may have used business assets for personal use. It is self-evident that GoPlay was thinly capitalized since they were unable to pay for the travel services promised, even after receiving $115,000 from Myerstown.

Bankruptcy filings also prove that GoPlay was insolvent at the inception of litigation. Moreover, it is probable that discovery will reveal that both Ainscough and Lyons financially benefitted from GoPlay's business operations, even while Myerstown lost all the money it had paid to secure the Trip. Given the months that elapsed between the payments made by Myerstown to GoPlay without the latter making expenditures on travel arrangements, nor making refunds, it is believed that GoPlay misappropriated and diverted Myerstown's deposits in order to perpetrate a fraud.

In summary, the majority of the factors weigh in favor of piercing the corporate veil. Sufficient facts have been pled for a Massachusetts court to pierce the corporate veil and treat the individually-named Defendants as synonymous with the corporate Defendant GoPlay. Therefore, it is proper for this Court, exercising diversity jurisdiction, to permit Plaintiff's veil piercing claims to proceed to discovery and expose the extent to which the twelve (12) factors above justify holding Defendants Ainscough and Lyons personally liable for the debt owed to Myerstown.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Ainscough's Motion to Dismiss.

## V. CONCLUSION

For all of the reasons set forth above, Plaintiff Myerstown Soccer Club respectfully requests that this Honorable Court deny Ainscough's Motion to Dismiss.

Respectfully submitted,

GIBBEL KRAYBILL & HESS LLP

Date: 8/31/2026 By: ______________________________

Justin J. Bollinger, Esquire
Attorney I.D. No. 308779
Elizabeth I. Reed, Esquire
Attorney I.D. No. 335704
2933 Lititz Pike
P.O. Box 5349
Lancaster PA 17606
(717) 291-1700 (p)
(717) 291-5547 (f)
*Attorney for Plaintiff*

**CERTIFICATE OF WORD COUNT**

I hereby certify that Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss is in compliance with Local Rule 7.08(b). This brief contains 4,625 word as computed by Microsoft Word.

Date: 8/31/2026

Justin J. Bollinger

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of August, 2026, the foregoing document was electronically filed on this date, it is available for viewing and downloading on the Court's CM/ECF system, and it will be served on all counsel and parties of record via the Court's CM/ECF system.

GIBBEL KRAYBILL & HESS LLP

By: ______________________________

Justin J. Bollinger, Esquire
Attorney I.D. No. 308779
Elizabeth I. Reed, Esquire
Attorney I.D. No. 335704
2933 Lititz Pike
P.O. Box 5349
Lancaster PA  17606
(717) 291-1700 (p)
(717) 291-5547 (f)
*Attorneys for Plaintiff*